# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-1223

_____

| | | |
|---|---|---|
| Standard Security Life Insurance Company of New York, a New York Corporation, | * * * * | |
| Appellant, | * * | |
| v. | * * * | Appeal from the United States District Court for the Western District of Missouri. |
| Devin West, | * * | |
| Appellee. | * * | [PUBLISHED] |

_____

Submitted: September 7, 2001
Filed: October 5, 2001

_____

Before BOWMAN, LOKEN, and HANSEN, Circuit Judges.

_____

PER CURIAM.

Standard Security Life Insurance Company of New York (Standard) appeals, pursuant to 9 U.S.C. § 16(a), the District Court's[1] grant of Devin West's motion to dismiss Standard's complaint which sought to invoke the Federal Arbitration Act

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

(FAA) to compel arbitration of the parties' insurance coverage dispute.[2] See Standard Sec. Life Ins. Co. v. West, 127 F. Supp. 2d 1064 (W.D. Mo. 2000). Having conducted a de novo review of the District Court's judgment, see Honn v. Nat'l Ass'n of Sec. Dealers, 182 F.3d 1014, 1017 (8th Cir. 1999), we affirm.

In November 1998, University of Missouri football player West purchased an insurance policy from Standard covering permanent total disability in the event he suffered an injury or sickness that prevented him from playing professional football. The policy included a provision stating that if a policy dispute arose, either the insured or Standard could make a written demand for arbitration. West later submitted an insurance claim, but Standard denied it and requested binding arbitration.

After West filed suit against Standard in a Missouri state court claiming breach of an insurance contract and vexatious refusal to pay, Standard filed suit in the District Court seeking an order compelling arbitration of the parties' dispute pursuant to the FAA. See 9 U.S.C. § 2 (1994) (declaring written arbitration provisions in contracts "evidencing a transaction involving commerce" to be "valid, irrevocable, and enforceable"). Standard also removed West's state-court suit to the District Court, and the court consolidated it with Standard's FAA suit. Standard moved to stay West's state-law claims pending the results of arbitration or, alternatively, to dismiss for failure to state a claim on the basis that the FAA barred West's coverage claims. West, in turn, moved to dismiss Standard's FAA action, arguing that the Missouri Arbitration Act rendered the insurance policy's arbitration clause unenforceable. See Mo. Rev. Stat. § 435.350 (2000) (declaring that an arbitration "provision in a written contract, *except contracts of insurance* and contracts of adhesion . . . is valid, enforceable and irrevocable" (emphasis added)). West also argued that the FAA did not preempt section 435.350 of the Missouri Revised Statutes because the McCarran-Ferguson Act

---

[2]The District Court also denied Standard's motion to stay or dismiss West's state-law claims.

prevents inadvertent federal preemption of a state statute regulating the insurance industry. See 15 U.S.C. § 1012(b) (1994) ("No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . . .").

In accordance with section 2 of the McCarran-Ferguson Act, inverse-preemption operates to bar application of the FAA if (1) the FAA does not specifically relate to the business of insurance, (2) the FAA would invalidate, impair, or supersede section 435.350, and (3) section 435.350 was enacted for the purpose of regulating the business of insurance. See Murff v. Prof'l Med. Ins. Co., 97 F.3d 289, 291 (8th Cir. 1996), cert. denied, 520 U.S. 1273 (1997). The parties did not dispute in the District Court whether the first two factors were met, and thus the court correctly focused on the third factor: whether section 435.350 was enacted to regulate "the business of insurance."

We hold that section 435.350 does regulate the business of insurance because it applies to the processing of disputed claims. This processing, in turn, has a substantial effect upon the insurer-insured relationship and the policy's interpretation and enforcement, both of which are "core" components of the business of insurance. See United States Dep't of Treasury v. Fabe, 508 U.S. 491, 501 (1993) (recognizing that the core of the business of insurance includes the insurer-insured relationship and the interpretation and enforcement of the policy); see also Express Scripts, Inc. v. Wenzel, No. 00-2788, 2001 WL 947057, at *6 (8th Cir. Aug. 22, 2001) (explaining that the Supreme Court has understood the McCarran-Ferguson Act to be a consumer protection law concerned with the core business of insurance). We also conclude that the District Court properly applied the three criteria relevant to deciding whether a particular practice at issue—here, section 435.350's prohibition against arbitration clauses in insurance contracts—involves the business of insurance. See Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129 (1982) (reaffirming that the three relevant

criteria are whether the practice (1) has effect of transferring or spreading policyholder's risk, (2) is integral part of insurer-insured relationship, and (3) is limited to entities within insurance industry).

First, as the District Court noted, section 435.350 transfers or spreads the risk by introducing the possibility of jury verdicts into the process for resolving disputed claims. See Fabe, 508 U.S. at 503-04 (observing that without the performance or enforcement of contract terms, no risk transfer occurs); Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co., 969 F.2d 931, 933 (10th Cir.) (noting that an insurance contract is evidence of agreement to spread risk and concluding that by enacting statute invalidating written arbitration clauses in contracts of insurance, Kansas legislature had limited enforceability of parties' agreement to spread risk; therefore, statute applied to reinsurance contract at issue), cert. denied, 506 U.S. 1001 (1992).[3] Second, section 435.350 regulates an integral part of the insurer-insured relationship by invalidating an otherwise mandatory insurance contract term that allows either party to compel arbitration of policy disputes, thus subjecting all policy disputes to the possibility of a jury trial. See Express Scripts, 2001 WL 947057, at *6 (concluding that state laws that control insurance contract terms are generally seen to regulate insurance under either the ERISA savings clause or the McCarran-Ferguson Act); Mut. Reinsurance Bureau, 969 F.2d at 933 (concluding that a Kansas arbitration statute similar to section 435.350 regulates the insurer-insured relationship); cf. UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 374 (1999) (finding that a California notice-prejudice rule met the second McCarran-Ferguson factor by changing bargain between insurer and insured and effectively creating mandatory contract term). And third, even though it is not part of the Missouri Insurance Code, section 435.350 is limited to entities within the insurance industry because insurance is the only industry singled out for an across-the-

---

[3]The Kansas arbitration statute at issue in Mutual Reinsurance was amended in 1995 to provide that, when construing the scope of the statute's applicability, reinsurance contracts are not to be considered contracts of insurance.

board invalidation of arbitration clauses.  See <u>Fabe</u>, 508 U.S. at 505-06 (rejecting argument that Ohio statute was not an insurance law but a bankruptcy law on the ground that the statute's primary purpose was identical to primary purpose of insurance company itself, i.e., paying claims made against policies); <u>Mut. Reinsurance Bureau</u>, 969 F.2d at 934 (ruling that for McCarran-Ferguson Act to apply it is not necessary that state statute be in form of insurance code or act relating only to insurance:  Kansas statute related basically to arbitration but nonetheless clearly and directly excepted insurance).

After carefully considering each of Standard's arguments for reversal and the cases Standard cites in support of them, we find that they provide no persuasive basis for undermining the District Court's well-reasoned analysis.  Accordingly, we affirm. The case is remanded for appropriate proceedings on West's state-law claims.

Judge Loken concurs in the result only.

A true copy.

Attest:

CLERK,  U.S.  COURT  OF  APPEALS,  EIGHTH  CIRCUIT.

-5-