A02A0176. CONTINENTAL INSURANCE COMPANY v. EQUITY RESIDENTIAL PROPERTIES TRUST.

(565 SE2d 603)

ANDREWS, Presiding Judge.

Equity Residential Properties Trust (Equity) sued its insurer, the Continental Insurance Company (Continental), claiming Continental breached the terms of the insurance policy issued to Equity and failed to pay amounts due under the policy. Relying on an arbitration agreement in the policy, Continental moved to compel arbitration of the dispute and for a stay of the suit. The Fulton County Superior Court denied the motion finding that OCGA § 9-9-2 (c) (3) of the Georgia Arbitration Code invalidated the arbitration agreement in the insurance policy. Continental brought this interlocutory appeal.

We conclude that, despite a choice of law provision in the policy applying Illinois law, the trial court correctly applied Georgia law set forth in OCGA § 9-9-2 (c) (3) which prohibits arbitration of this insurance dispute. The trial court also correctly concluded that the McCarran-Ferguson Act (MFA) (15 USC § 1011 et seq.) barred the Federal Arbitration Act (FAA) (9 USC § 1 et seq.) from preempting the anti-arbitration provisions of § 9-9-2 (c) (3). Accordingly, we affirm.

The insurance policy issued by Continental to Equity contained an agreement to arbitrate all disputes arising out of or related to the policy and a clause indicating that the policy is governed by the laws of the state of Illinois, the principal address of Equity. This choice of law, however, does not control the procedural law applicable in the forum state. The rule of lex fori dictates that Georgia courts will apply Georgia law governing procedural or remedial matters. *Simmons Co. v. Deutsche Financial Svcs. Corp.*, 243 Ga. App. 85, 87 (532 SE2d 436) (2000). The Georgia Arbitration Code (GAC) (OCGA § 9-9-1 et seq.) is a body of procedural law setting forth the public policy of this State with respect to the enforcement of agreements to arbitrate. *Weyant v. MacIntyre*, 211 Ga. App. 281, 282-283 (438 SE2d 640) (1993). As then-Judge Cardozo explained in describing the New York arbitration laws: "Arbitration is a form of procedure whereby differences may be settled. It is not a definition of the rights and wrongs

out of which differences grow." *Berkovitz v. Arbib & Houlberg, Inc.*, 230 N.Y. 261, 270 (1) (130 NE 288) (1921).[1] Moreover, as set forth below, OCGA § 9-9-2 (c) (3) establishes the public policy of Georgia that insureds shall not be compelled by the terms of an insurance contract written by the insurer to give up their common law right to access to the courts to resolve disputes arising under the contract. See *Pinnacle Constr. Co. v. Osborne*, 218 Ga. App. 366, 367-368 (460 SE2d 880) (1995); *Weyant*, 211 Ga. App. at 282. Georgia courts will not enforce a contractual provision choosing the law of another state where to do so would contravene the public policy of Georgia. *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676 (238 SE2d 368) (1977). As the procedural law and public policy of Georgia, the provisions of the GAC apply in this case.

The GAC provides in OCGA § 9-9-2 (c) (3) that:

> (c) This part shall apply to all disputes in which the parties thereto have agreed in writing to arbitrate and shall provide the exclusive means by which agreements to arbitrate disputes can be enforced, except the following, to which this part shall not apply . . . (3) Any contract of insurance, as defined in paragraph (1) of Code Section 33-1-2; provided, however, that nothing in this paragraph shall impair or prohibit the enforcement of or in any way invalidate an arbitration clause or provision in a contract between insurance companies.

This provision invalidates arbitration agreements in insurance contracts as defined in OCGA § 33-1-2, with the exception that it does not prohibit enforcement of arbitration agreements in contracts between insurance companies. Since the arbitration agreement between Continental and Equity is contained in an insurance contract as contemplated by OCGA § 9-9-2 (c) (3), and is not part of a contract between insurance companies, it is unenforceable under the provisions of OCGA § 9-9-2 (c) (3).

Nevertheless, because it is undisputed that the insurance contract containing the arbitration agreement involves interstate commerce, the effect of the FAA on the agreement must be considered. "Under the FAA, written agreements to arbitrate contained in contracts involving interstate commerce are valid and enforceable in federal and state courts. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U. S.

---

[1] Although portions of the FAA have been classified as "substantive" rather than "procedural" based on congressional intent to exercise control over arbitration in interstate commerce under the Commerce Clause (*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 24 (103 SC 927, 74 LE2d 765) (1983); *Southland Corp. v. Keating*, 465 U. S. 1, 12-15 (104 SC 852, 79 LE2d 1) (1984)), that does not alter the procedural character of the GAC.

265 (115 SC 834, 130 LE2d 753) (1995)." *Simmons Co.*, 243 Ga. App. at 86. Accordingly, "[t]he FAA preempts state laws that undermine enforcement of private arbitration agreements." Id. at 88 (1). States may invalidate arbitration agreements subject to the FAA under contract defenses that apply generally to all contracts including those involving arbitration, but they may not invalidate those agreements under laws applicable only to arbitration provisions. *Doctor's Assoc. v. Casarotto*, 517 U. S. 681, 686-687 (116 SC 1652, 134 LE2d 902) (1996). In other words, the FAA prohibits states from singling out arbitration agreements for suspect status, instead requiring that such agreements be placed "upon the same footing as other contracts." (Citation and punctuation omitted.) Id. at 687 (II). Because the GAC is a state law that singles out and invalidates the arbitration agreement between Continental and Equity, the FAA would ordinarily preempt it and require enforcement of the agreement.

In this case, however, the MFA bars the FAA from preempting the Georgia law. Under the MFA, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 USC § 1012 (b). Since the FAA does not specifically relate to the business of insurance, the MFA creates an exception to the usual rule of FAA preemption of state statutes, but only for statutes enacted "for the purpose of regulating the business of insurance." *U. S. Dept. of Treasury v. Fabe*, 508 U. S. 491, 499-508 (113 SC 2202, 124 LE2d 449) (1993); *Bankers Ins. Co. v. Taylor*, 267 Ga. 134, 135 (475 SE2d 619) (1996). Accordingly, the dispositive issue is whether OCGA § 9-9-2 (c) (3) of the GAC is a law enacted for the purpose of regulating the business of insurance.

In *Securities & Exchange Comm. v. Nat. Securities*, 393 U. S. 453, 460 (89 SC 564, 21 LE2d 668) (1969), the Supreme Court held that state statutes aimed at protecting or regulating the relationship between the insured and the insurer, whether directly or indirectly, are laws regulating the business of insurance within the meaning of the MFA. Furthermore, laws enacted for the purpose of regulating the business of insurance necessarily encompass more than just the "business of insurance," but consist of laws that possess the "end, intention, or aim" of adjusting, managing, or controlling the business of insurance. *Fabe*, 508 U. S. at 505. Finally, the Supreme Court has discussed three characteristics relevant to determining whether a particular practice is part of the "business of insurance" within the meaning of the MFA:

> first, whether the practice has the effect of transferring or
> spreading a policyholder's risk; second, whether the practice
> is an integral part of the policy relationship between the

insurer and the insured; and third, whether the practice is limited to entities within the insurance industry. [But] [n]one of these criteria is necessarily determinative in itself. . . .

(Emphasis omitted.) *Union Labor Life Ins. Co. v. Pireno*, 458 U. S. 119, 129 (II) (102 SC 3002, 73 LE2d 647) (1982).

Applying these standards, we conclude that OCGA § 9-9-2 (c) (3) of the GAC is a law enacted for the purpose of regulating the business of insurance within the meaning of the MFA. By invalidating arbitration agreements in insurance contracts, this section is aimed, if not directly then indirectly, at regulating the relationship between the insured and the insurer in disputed insurance claims. In so doing, it is limited to the insurance industry, integral to the policy relationship between the insured and the insurer, and has the effect of transferring or spreading risk by preserving the possibility of a jury verdict (as opposed to compelled arbitration) to resolve the claim. In this context, the anti-arbitration provision of § 9-9-2 (c) (3) is a law that possesses the "end, intention, or aim" of adjusting, managing or controlling the business of insurance. See *Standard Security Life Ins. Co. &c. v. West*, 267 F3d 821 (8th Cir. 2001). As a law enacted for the purpose of regulating the business of insurance, § 9-9-2 (c) (3) is exempted by the MFA from the preemptive effect of the FAA.

Because OCGA § 9-9-2 (c) (3) invalidated the arbitration agreement in the insurance policy, the trial court did not err by denying Continental's motion seeking to compel arbitration and stay the suit.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED MAY 20, 2002 —

*Drew, Eckl & Farnham, Stevan A. Miller, Richard I. Metzger, Pursley, Howell, Lowery & Meeks, Jo L. Meeks, Eric N. Van De Water, Goldner, Sommers, Scrudder & Bass, Glenn S. Bass, Weener, Mason & Nathan, William P. Mason, Brian J. Harris*, for appellant.

*Holland & Knight, Jeffrey Y. Lewis, Fred R. Slotkin, Jr.*, for appellee.