[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 30, 2004
THOMAS K. KAHN
CLERK

No. 03-12129
Non-Argument Calendar

D. C. Docket No. 03-00002-CV-2

CHARLES K. MCKNIGHT,
JEAN B. MCKNIGHT,

Plaintiffs-Appellees,

versus

CHICAGO TITLE INSURANCE CO., INC.,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Georgia

**(January 30, 2004)**

Before BARKETT, HULL and COX, Circuit Judges.

PER CURIAM:

## I. INTRODUCTION

This appeal presents a single issue: whether the Federal Arbitration Act, 9 U.S.C. § 1, et seq., preempts the Georgia Arbitration Code, Ga. Code Ann. § 1, et. seq., inasmuch as the Georgia Arbitration Code expressly excludes from its coverage arbitration provisions in insurance contracts. We conclude that it does not: by virtue of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), the Federal Arbitration Act does not preempt the insurance contract provision of the Georgia Arbitration Code. Because the district court also came to this conclusion, we affirm the district court's order denying the Defendant's motion to compel arbitration.

## II. BACKGROUND AND PROCEDURAL HISTORY

In 1991, Charles and Jean McKnight, Plaintiffs below, acquired a tract of property in Georgia, and contracted with Defendant, Chicago Title Insurance Company, for title insurance. The insurance contract included an arbitration provision, which read, in pertinent part:

> Unless prohibited by applicable law, either the Company or the insured may demand arbitration . . . . All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. . . .
>
> The law of the situs of the land shall apply to an arbitration . . . .

(R.1-1 at Ex. 1 at Conditions and Stipulations ¶ 14.) The title insurance policy guaranteed that the McKnights would have a fifty-foot-wide easement on their property.

In 2001, when they attempted to subdivide the property, the McKnights learned that the easement was only twenty feet wide, and thus the property was unsuitable for subdividing. They then made a claim against Chicago Title for the diminished value of the property. Chicago Title denied the claim, and the McKnights filed this breach-of-contract action in the district court. Chicago Title moved to compel arbitration, and the district court denied its motion, reasoning that the Georgia Arbitration Code's exclusion of arbitration provisions in insurance contracts made the arbitration provision in this case unenforceable.[1] Chicago Title appeals the denial of the motion.

III. CONTENTIONS OF THE PARTIES AND STANDARDS OF REVIEW

Chicago Title contends that the district court erred in concluding that the Georgia Arbitration Code makes the arbitration provision unenforceable. This was

---

[1]Alternatively, the district court reasoned that the arbitration provision had not been triggered, as the amount of the insurance policy exceeded $1,000,000 at the time of the claim, and the McKnights had not agreed to arbitrate, as required by the provision. The court based its assessment of the policy's worth on an index the McKnights provided, and stated that Chicago Title did not dispute the accuracy of this index. The record, however, shows that Chicago Title did indeed dispute the accuracy of the McKnight's index, by providing a competing index which valued the policy at less than $1,000,000. The trial court did not make any findings of fact about which was the proper index to use, and thus it was error to support its conclusion with the McKnight's index. But, because we conclude that the district court correctly found that the provision was otherwise unenforceable, this error is harmless.

a conclusion of law which we review de novo. *Parker v. Secretary for the Dep't of Corrs.*, 331 F.3d 764, 768 (11th Cir. 2003). *See also Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1270 (11th Cir. 2002) ("We review a district court's order denying a motion to compel arbitration *de novo*.").

## IV. DISCUSSION

The sole issue in this appeal involves the intersection of three statutes. First is the Federal Arbitration Act, which provides the general rule:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This federal rule, that arbitration provisions in contracts involving commerce will be enforced, generally preempts state law to the contrary. *Volt Info. Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 1255 (1989) ("[W]e have held that the FAA preempts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'") (citation omitted). The parties in this case

4

agree that the contract containing the arbitration provision at issue is a contract evidencing a transaction involving commerce.

Second is the exception to the rule, found in the McCarran-Ferguson Act, which leaves the regulation of the insurance industry to the states:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, . . . unless such Act specifically relates to the business of insurance . . .

15 U.S.C. § 1012(b). In the right circumstances, the McCarran-Ferguson Act provides an exception to the general rule of arbitration under the Federal Arbitration Act. If the state has an anti-arbitration law enacted for the purpose of regulating the business of insurance, and if enforcing, pursuant to the Federal Arbitration Act, an arbitration clause would invalidate, impair, or supersede that state law, a court should refuse to enforce the arbitration clause. *Standard Sec. Life Ins. Co. of New York v. West*, 267 F.3d 821, 823 (8th Cir. 2001) (stating and applying this exception). The parties and we agree that the Federal Arbitration Act does not itself specifically relate to the business of insurance.

Third is the statute we must interpret to determine whether it falls into the general rule or the exception. It is the Georgia Arbitration Act, and specifically the

5

part of that act which excludes arbitration provisions in insurance contracts from its

coverage. That provision reads:

> [The Georgia Arbitration Code] shall apply to all disputes in which the parties thereto have agreed in writing to arbitrate and shall provide the exclusive means by which agreements to arbitrate disputes can be enforced, except the following, to which this part shall not apply:
> . . .
> (3)    Any contract of insurance, as defined in paragraph (1) of Code Section 33-1-2; provided, however, that nothing in this paragraph shall impair or prohibit the enforcement of or in any way invalidate an arbitration clause or provision in a contract between insurance companies;

Ga. Code Ann. § 9-9-2(c). Based on this provision, Georgia courts refuse to enforce

arbitration provisions in insurance contracts. *Continental Ins. Co. v. Equity*

*Residential Props. Trust*, 565 S.E.2d 603, 605-06 (Ga. Ct. App. 2002) (affirming,

based on § 9-9-2(c)(3), trial court's denial of a motion to compel arbitration pursuant

to an insurance contract), *cert. denied* (Ga. 2002). *Cf. Pinnacle Constr. Co., Inc. v.*

*Osborne*, 460 S.E.2d 880, 882 (Ga. Ct. App. 1995) (affirming, based on § 9-9-2(c)(8),

trial court's denial of motion to compel arbitration, where construction company

attempted to enforce un-initialed arbitration provision of a real estate sales contract).

Because the parties do not dispute that the Federal Arbitration Act's

preempting Ga. Code Ann. § 9-9-2(c)(3) would invalidate, impair, or supersede § 9-

9-2(c)(3), we are left with only one question: whether § 9-9-2(c)(3) is "a law enacted"

6

by Georgia "for the purpose of regulating the business of insurance," as that term is used in the McCarran-Ferguson Act. The McCarran-Ferguson Act does not define this term, but a pair of Supreme Court cases do. The Court stated in *Secs. and Exch. Comm'n v. National Secs., Inc.*, 393 U.S. 453, 460, 89 S. Ct. 564, 568 (1969) that, in the McCarran-Ferguson Act, Congress was seeking to leave to the states the "relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement." Thus, "[s]tatutes aimed at protecting or regulating this relationship, directly or indirectly are laws regulating the 'business of insurance.'" *Id*. at 460, 89 S. Ct. at 568-69. Later, in *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S. Ct. 3002, 3009 (1982), the Court enumerated "three criteria relevant in determining whether a particular practice is part of the 'business of insurance:'"

> *first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry. None of these criteria is necessarily determinative in itself . . .

Based on these definitions of laws regulating the business of insurance, we conclude, like the only other two federal courts of appeals to address this question have concluded, that a provision in a state's arbitration code excepting insurance contracts is a law regulating the business of insurance. *See Mutual Reinsurance Bureau v.*

7

*Great Plains Mut. Ins. Co.*, 969 F.2d 931, 934-35 (10th Cir. 1992) *and West*, 267 F.3d at 824 (both holding that insurance-contract exceptions to state arbitration codes satisfied the McCarran-Ferguson Act, and thus that the state laws were not preempted by the Federal Arbitration Act).

First, Ga. Code Ann. § 9-9-2(c)(3) affects the relationship between insurer and insured. Specifically, it impacts the enforcement of the policy issued by the insurer, by expressly invalidating the parties' chosen mode of contract enforcement. *Mutual Reinsurance Bureau*, 969 F.2d at 933. Second, § 9-9-2(c)(3) affects the transferring or spreading of a policyholder's risk, by "introducing the possibility of jury verdicts into the process for resolving disputed claims." *West*, 267 F.3d at 824. By limiting the enforceability an agreement to spread risk - and all insurance contracts embody an agreement to spread risk - the Georgia legislature has altered this aspect of underwriting. *Mutual Reinsurance Bureau*, 969 F.2d at 933. Third, § 9-9-2(c)(3) "regulates an integral part of the insurer-insured relationship by invalidating an otherwise mandatory insurance contract term that allows either party to compel arbitration of policy disputes, thus subjecting all policy disputes to the possibility of a jury trial." *West*, 267 F.3d at 824. Fourth, § 9-9-2(c)(3) is expressly limited to entities within the insurance industry: it is clear that the Georgia legislature intended this subsection to apply only to the insurance industry.

8

Fifth and finally, Georgia, speaking through one of its courts, has itself characterized § 9-9-2(c)(3) as a law enacted to regulate the business of insurance. *Continental Ins.*, 565 S.E.2d at 605. In *Continental Ins.*, 565 S.E.2d at 605-06, the court addressed the very issue we address today, and concluded that the McCarran-Ferguson Act excepted § 9-9-2(c)(3) from preemption by the Federal Arbitration Act. Georgia's highest court gave its tacit approval to this decision by denying certiorari. *Id*. While the *Continental Ins.* court's characterization of § 9-9-2(c)(3) as a law enacted to regulate the business of insurance is not binding on us, it is relevant to our inquiry, because "Congress, in leaving the 'business of insurance' to the States, 'was legislating concerning a concept which had taken on its coloration and meaning largely from state law, from state practice, from state usage.'" *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 369 n.5, 122 S. Ct. 2151, 2161 n.5 (2002) (concluding that an HMO was an insurer for purposes of ERISA's preemption provision's savings clause, in part because the home state of the insurer regulated the HMO through its insurance department; quoting *SEC v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65, 69, 79 S. Ct. 618, 620-21 (1959)). Considering the *Continental Ins.* court's characterization, along with the other four considerations, we conclude that § 9-9-2(c)(3) is a law enacted to regulate the business of insurance, within the meaning of

the McCarran-Ferguson Act. Thus, § 9-9-2(c)(3) is excepted from preemption by the Federal Arbitration Act.

## V.  CONCLUSION

Because we conclude that the McCarran-Ferguson Act excepts § 9-9-2(c)(3) from preemption by the Federal Arbitration Act, the district court's denial of Chicago Title's motion to compel arbitration is affirmed.

AFFIRMED.