A04A0363. LOVE v. MONEY TREE, INC.
A04A0468. HAWKINS-BAILEY v. MONEY TREE, INC.
(598 SE2d 846)

RUFFIN, Presiding Judge.

Sabrina Hawkins-Bailey (Bailey) and Betty Love appeal the trial court's grant of The Money Tree, Inc.'s motion to compel arbitration and the dismissal of both cases with prejudice.[1] For reasons that follow, we affirm.

Similar to our review of the grant of summary judgment, which involves the elimination of all genuine issues of material fact, the standard of review from the grant of a motion to compel arbitration is whether the trial court was correct as a matter of law.[2] Viewed in this manner, the record shows that Love and Bailey are both customers of The Money Tree, a Georgia corporation engaged in the consumer finance business.

The loan documents signed by Love and Bailey in this case are virtually identical. Next to the signature line of the loan contract, there is a provision in all capital letters that states: BORROWER ACKNOWLEDGES THE EXISTENCE OF THE ALTERNATIVE DISPUTE RESOLUTION AGREEMENT AS SET FORTH ON THE REVERSE SIDE, AND SPECIFICALLY AGREES TO ITS TERMS. The beginning and end of the agreement on the reverse side repeats the warning "Please read this statement carefully," and suggests that the borrower ask for legal counsel if she does not understand the agreement. Both women initialed the bottom of the agreement and signed the loan documents. Also, there is a notice to the borrower posted in the closing booth of The Money Tree that sets forth in all capital letters the meaning of arbitration and its legal effects on the borrower.

Both women also signed a document titled "Voluntary Insurance Election Form," which sets forth the opportunity to purchase separately Accidental Death and Dismemberment Insurance and/or Auto Club Membership. The form states that the borrower's decision to purchase either insurance or auto club membership does not affect the amount of the credit sale and that the borrower has already been approved for the credit sale. It also states that if the borrower does not wish to purchase these products, she is not to sign the document. Both women elected auto club membership and signed the line that sets forth "I want Auto Club Membership." The auto club membership

---

[1] Because these cases involve the same operative facts and enumerations of error, we have consolidated them on appeal.

[2] *Moore & Moore Plumbing v. Tri-South Contractors*, 256 Ga. App. 58, 60-61 (1) (567 SE2d 697) (2002).

provides benefits such as lock and key service, wrecker service and emergency ambulance service.

Love and Bailey defaulted on their loans with The Money Tree, and both were sued by The Money Tree in separate collection actions in magistrate court. The magistrate court entered a judgment against Bailey and she appealed to the superior court. Love filed an answer and counterclaim and transferred her case to superior court, where a judgment was entered against her also.

The Money Tree filed a motion to compel arbitration, arguing that the transaction was governed by the Federal Arbitration Act (FAA) because it involved interstate commerce and an agreement to arbitrate. The motion was supported by the affidavit of Vance Martin, the President of The Money Tree. Martin testified that Love and Bailey had signed contracts that contained an agreement providing for arbitration. Both transactions were "pledged" to a finance corporation located in Texas.

The Money Tree also filed the affidavit of Jim Tome, the branch manager of The Money Tree office where Love and Bailey signed their promissory notes. Tome testified that he personally closed the loans for Love and Bailey, that both signed voluntary insurance election forms, both signed a membership agreement with Interstate Motor Club, Inc., and that he reviewed with both the consequences of default and the fact that there was an arbitration agreement which was part of the loan contract. Tome also testified that he was certain that each woman read and understood the loan papers, and that neither expressed any dissatisfaction with or objected to any term in the contracts. He also testified that each was given ample opportunity to read and review the contracts and to ask any questions prior to signing.

In response, Love and Bailey argued that there was no agreement to arbitrate because both had little ability to read, less ability to comprehend, and that neither was shown the reverse side of the loan document where the arbitration provision was printed. They also argued that the arbitration agreement was unconscionable because of their limited ability to read and comprehend. Love filed an affidavit stating that she had a twelfth grade education as a special education student and that she could read a little, but not much. She also stated that she did not understand what arbitration meant. Bailey did not file an affidavit, but at the hearing on the motion, she testified that she had a ninth grade education and that she "can't read big letters and stuff like that."

The trial court granted The Money Tree's motion to compel arbitration and dismissed both actions with prejudice. The court noted that both women had admitted that they could read. The court found as a matter of fact that Bailey was a high school drop-out and

that the loan transaction was explained to her by Tome. It also found that Love had a twelfth grade education and was able to read. The court also found as a matter of fact that the contract signed by both women expressly provided that is was to be controlled by the FAA and stipulates that the relationship involves interstate commerce.

The court concluded as a matter of law that neither defendant was fraudulently induced to agree to the arbitration clause and that the agreement was not unconscionable. The court, relying on the U. S. Supreme Court's recent decision in *Citizens Bank v. Alafabco, Inc.*,[3] also found that the transaction involved interstate commerce. Finally, it held that the auto club membership was not an insurance contract.

1. The FAA requires enforcement of an agreement to arbitrate if there is a written contract providing for arbitration, a transaction involving interstate commerce, and the contract is otherwise enforceable.[4] Love and Bailey argue that interstate commerce was not involved here because the contract was between Georgia residents and a Georgia corporation. We disagree.

It is undisputed that the loan was financed by an out-of-state institution, and we agree with the trial court that *Alafabco* controls. *Alafabco* involved a debt restructuring agreement between an Alabama bank and its customers, all Alabama residents. The circuit court ordered arbitration in accordance with the arbitration agreements contained in the contracts between the parties. The Alabama Supreme Court reversed, holding that the contracts did not have a substantial effect on interstate commerce. The U. S. Supreme Court reversed, stating that the transactions satisfied the FAA's "involving commerce" test for at least three reasons, one of which was simply that the bank's loans to Alafabco were used to finance projects out of state.[5] Based on the record and *Alafabco*, the trial court correctly found that the loan contract involved interstate commerce and was subject to the FAA.

2. The McCarron-Ferguson Act[6] provides a reverse preemption of the binding effect of the FAA as to matters of insurance. Love and Bailey, relying solely on a Georgia Attorney General's opinion dated June 11, 1976, argue that the auto club membership is in fact a contract of insurance and that the entire loan transaction is thus exempt from the FAA. We disagree for several reasons.

First, while opinions of the Attorney General are persuasive

---

[3] 539 U. S. 52 (123 SC 2037, 156 LE2d 46) (2003).

[4] 9 USC § 1 et seq.

[5] *Alafabco*, supra at 53.

[6] 15 USC § 1012 (b).

authority, they are not binding on our appellate courts.[7] Second, although the Attorney General stated that "the risk distribution feature inherent in every insurance contract, can also be seen [in automobile club memberships] when the disproportionately high ratio of maximum benefits provided for in each plan is set over against the cost of each membership," the opinion was not addressing the issue of whether an auto club membership offered independently from a loan contract could exempt the loan from the FAA. Third, Love and Bailey have not cited, nor have we located, any cases, regulations or other indications that Georgia, as a result of this opinion, has since chosen to regulate auto club memberships as contracts of insurance.

The parties do not dispute that the loan contract at issue here is governed by the Georgia Industrial Loan Act, not the insurance commissioner. Accordingly, the trial court correctly ruled that the auto club membership is not a contract of insurance.

3. Love and Bailey argue that the trial court erred in not following three prior decisions in which Georgia courts found the arbitration agreements in certain contracts unconscionable. These arbitration agreements were in the lending contracts of The Money Tree's sister corporation, a company called Money to Lend. In particular, Love and Bailey argue that *Money to Lend v. Bouie*[8] compels a different result here. We disagree.

First, in *Money to Lend v. Bouie*, the Superior Court of Decatur County denied Money to Lend's motion to compel arbitration. *Bouie* involved the sale of a used automobile through Best Buy Autos. The court found that the agreement was an unconscionable one-way street because Bouie had no education and could not read or write. Similarly, in *Money to Lend v. Sol*,[9] which also involved the sale of a used automobile by Best Buy, the Superior Court of Seminole County denied a motion to compel arbitration. Just as in *Bouie*, the court found that Sol could not read or write English, and that the agreement was thus unconscionable. Finally, in *Green v. Hill*[10] the Magistrate Court of Seminole County denied Money to Lend's motion to compel arbitration. However, the court did not address the literacy of the borrower, but instead scheduled a hearing to determine whether the agreement was unconscionable.

All of these cases are factually distinguishable from the present case. *Bouie* and *Sol* held that the arbitration agreement was unconscionable because the borrower did not read or write English, and

[7] *C. W. Matthews Contracting Co. v. Collins*, 214 Ga. App. 532, 533 (448 SE2d 234) (1994).
[8] Civil Action No. 99-V-673 (Decatur County Superior Court, July 5, 2000).
[9] Civil Action No. MV 00-0061 (Seminole County Superior Court, June 14, 2000).
[10] Civil Action No. 2000 (Seminole County Superior Court, April 12, 2002).

*Green* scheduled a hearing to determine the same. These cases do not dictate a different result here, where the court specifically found that the borrowers could read, that they were in no way fraudulently induced to sign the contract, and that the loan contract was financed out of state and specifically stipulated that it involved interstate commerce and that the FAA would control. The trial court's decision is consistent with the Georgia principle that:

> a party to a contract who can read, must read or show a legal excuse for not doing so, and ordinarily if fraud is an excuse, it must be such fraud as would prevent the party from reading the contract.[11]

Accordingly, we affirm the trial court's grant of The Money Tree's motion to compel arbitration and dismissal of both actions with prejudice.

*Judgments affirmed. Eldridge and Adams, JJ., concur.*

DECIDED APRIL 14, 2004 — ▮▮▮▮▮▮▮▮

*Simpson & Cross, Ralph F. Simpson,* for appellants.
*Lambert, Floyd & Conger, George C. Floyd, David G. Crockett,* for appellee.

---

[11] (Punctuation omitted.) *Results Oriented v. Crawford,* 245 Ga. App. 432, 438-439 (1) (b) (538 SE2d 73) (2000), aff'd, *Crawford v. Results Oriented,* 273 Ga. 884 (548 SE2d 342) (2001).
[1] OCGA § 16-5-23.1.
[2] OCGA § 16-5-41.
[3] OCGA § 16-5-20.
[4] OCGA § 16-7-21.