S04G1474. LOVE et al. v. MONEY TREE, INC.
(614 SE2d 47)

SEARS, Presiding Justice.

We granted certiorari in this case to consider whether the sale of memberships in automobile clubs constitutes the sale of insurance. The Court of Appeals held that it did not,[1] but, for the reasons that follow, we conclude that it does. This conclusion means that we must also address whether the McCarran-Ferguson Act[2] (the "MFA") preempts the Federal Arbitration Act[3] ("FAA") and prohibits the enforcement of a clause in the parties' loan agreement that requires any disputes to be resolved by arbitration. Because the application of the FAA would impair a statute of this State regulating the business of insurance, we conclude that the MFA preempts the FAA and prohibits the enforcement of the parties' arbitration agreement. Accordingly, we reverse the judgment of the Court of Appeals.

1. The appellee, The Money Tree, Inc., is licensed to make consumer loans under the Georgia Industrial Loan Act,[4] and the appellants, Betty Love and Sabrina Hawkins-Bailey, are both customers of The Money Tree. A branch manager of one of The Money Tree stores who closed transactions with both of the appellants

---

[1] *Love v. Money Tree*, 267 Ga. App. 96 (598 SE2d 846) (2004).
[2] See 15 USC §§ 1011-1015.
[3] 9 USC §§ 1-16.
[4] OCGA §§ 7-3-1 to 7-3-29.

submitted an affidavit describing the transactions. He stated that, in addition to loan documents, which contained a provision providing arbitration in the event of a dispute between the parties, both appellants signed a document entitled "Voluntary Insurance Election Form." The branch manager described this form as "our" form, thus indicating that the form was prepared by The Money Tree and not by an insurance company. The form provided an opportunity for the appellants to buy accidental death and dismemberment insurance and/or automobile club membership. Both appellants elected the automobile club membership with the Interstate Motor Club. The membership cost was financed by The Money Tree, and included in the loan documents signed by the appellants. The manager also stated that, at the time of the loan, he had the appellants sign membership agreements with the Interstate Motor Club.

Love and Hawkins-Bailey defaulted on their loans, and both were sued by The Money Tree in the Magistrate Court of Decatur County. The magistrate court entered a judgment against Hawkins-Bailey, and she appealed to the Superior Court of Decatur County. Love had her case transferred to superior court before a judgment was entered in magistrate court. In superior court, the appellants contended that Vance Martin is the president and sole owner of The Money Tree, Inc.; that William Martin is the vice-president; that Vance Martin owns 40% of the Interstate Motor Club, William Martin owns 20%, and two children of Vance Martin own 40%; that Vance Martin directs and controls the policies of both companies; that The Money Tree and the Interstate Motor Club share the same office; that the Interstate Motor Club is in the business of selling insurance, but that it does not have an insurance certificate; that in most, if not all, of The Money Tree's loan transactions, it finances a charge for the Interstate Motor Club; that The Money Tree receives 60% of all auto club memberships and the Interstate Motor Club receives 40%; that in the fiscal year 1998, The Money Tree received $701,428 on the sale of auto club memberships; and that The Money Tree, the Interstate Motor Club, and the Martins are engaged in a fraudulent scheme to force borrowers to purchase an auto club membership in order to receive a loan.

The Money Tree filed a motion to compel arbitration, arguing that the dispute was governed by the FAA. The trial court granted that motion, and the Court of Appeals affirmed, ruling that the automobile club memberships were not insurance and that the MFA did not preclude the FAA from applying in this case.[5]

---

[5] *Love*, 267 Ga. App. at 98-99 (2).

2. The appellants contend that the Court of Appeals erred by concluding that the automobile club memberships did not constitute insurance. We agree. The auto memberships provide that, in exchange for a monthly fee, the club will, among other things, pay 50% of moving traffic violations up to $200; $50 for emergency road service; $75 for an emergency ambulance service; $200 for an emergency travel service if a member's car became disabled more than 100 miles from her home; up to $100 in attorney fees to collect damages for personal injuries sustained in an auto accident or to defend a member in traffic court; and up to $750 in attorney fees if prosecuted for criminal manslaughter.

In Georgia, insurance is defined as "a contract which is an integral part of a plan for distributing individual losses whereby one undertakes to indemnify another or to pay a specified amount or benefits upon determinable contingencies."[6] Here, the auto club undertakes to pay a specified amount of money to its members upon the occurrence of determinable contingencies. Moreover, by enlisting numerous members, the club distributes individual losses among a large group of purchasers. Several courts have considered similar plans to be insurance under definitions similar to the one set forth in OCGA § 33-1-2 (2).[7] Moreover, a leading treatise on insurance takes the position that auto club memberships should be considered insurance.[8]

In addition, the United States Supreme Court has held that a statute that "explicitly grants national banks permission to 'act as the agent for any fire, life, or other insurance company,' to 'solici(t) and sel(l) insurance,' to 'collec(t) premiums,' and to 'receive for services so rendered . . . fees or commissions,'" concerns the business of insurance.[9] In the present case, The Money Tree's branch manager stated in his affidavit that it was The Money Tree's practice to sell the memberships at the time of the loan closing, and The Money Tree receives commissions on the memberships so sold.[10] Thus, under the

---

[6] OCGA § 33-1-2 (2).

[7] *Arkansas Motor Club v. Arkansas Employment Sec. Div.*, 373 SW2d 404, 408-409 (Ark. 1963); *Texas Assn. of Qualified Drivers v. State*, 361 SW2d 580, 581-582 (Tex. App. 1962); *Continental Auto Club v. Navarre*, 60 NW2d 180, 181-182 (Mich. 1953); *People by Abrams v. American Motor Club*, 520 NYS2d 383, 385 (N.Y. App. Div. 1987).

[8] See 1-1 Appleman on Insurance 2d § 1.4; 12-256 Appleman on Insurance § 7003; 19-354A Appleman on Insurance § 10336.

[9] *Barnett Bank, N.A. v. Nelson*, 517 U. S. 25, 39 (116 SC 1103, 134 LE2d 237) (1996).

[10] A case on which The Money Tree relies, *Cody v. Community Loan Corp. of Richmond County*, 606 F2d 499 (5th Cir. 1979), is distinguishable from the present case. In *Cody*, the plaintiffs did not contend that the finance company did not have the authority to sell the insurance or to include a finance charge for it. Instead, they contended that financial disclosures regarding the insurance were insufficient. Here, on the other hand, the appellants

rationale of *Barnett Bank*, The Money Tree was engaged in the business of insurance by selling memberships to the appellants.

For the foregoing reasons, we conclude that the trial court and the Court of Appeals erred by ruling that sale of the auto club memberships did not constitute the sale of insurance.

3. We turn now to the question whether the FAA requires the parties to submit their dispute to arbitration even though OCGA § 9-9-2 (c) (3) provides that agreements to arbitrate disputes regarding "contracts of insurance" are invalid in Georgia. For the reasons that follow, we conclude that the MFA prohibits the FAA from preempting OCGA § 9-9-2 (c) (3).

The FAA provides that agreements to arbitrate in contracts involving commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[11] Moreover, this rule requiring the enforcement of arbitration provisions generally preempts state law to the contrary.[12] The MFA, however, prohibits the application of any federal statute when it would "invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance."[13]

Accordingly, we must determine whether OCGA § 9-9-2 (c) (3) is a State law "enacted for the purpose of regulating the business of insurance" and, if so, whether the application of the FAA would impair OCGA § 9-9-2 (c) (3). Numerous courts, including our Court of Appeals, have considered whether a State law that prohibits the arbitration of disputes involving insurance is a State law "enacted for the purpose of regulating the business of insurance." These courts have consistently held such State laws have been enacted for the purpose of regulating insurance; that application of the FAA would impair those laws; and that the MFA thus precludes the FAA from preempting those State laws.[14] We find the reasoning of these cases persuasive. Moreover, as the holdings in the foregoing cases make clear, the issue whether Georgia law forbids the arbitration of an

---

are contending, among other things, that the auto memberships (the insurance) were sold without the authority to do so.

[11] 9 USC § 2.

[12] *McKnight v. Chicago Title Ins. Co.*, 358 F3d 854, 857 (11th Cir. 2004).

[13] 15 USC § 1012 (b). See *McKnight*, 358 F3d at 857-859; *United States Dept. of Treasury v. Fabe*, 508 U. S. 491 (113 SC 2202, 124 LE2d 449) (1993). The MFA will not preclude the application of a federal law to a state law enacted for the purpose of regulating the business of insurance if the federal law also relates to that business. 15 USC § 1012 (b). The FAA, of course, does not relate to the business of insurance.

[14] *Continental Ins. Co. v. Equity &c. Trust*, 255 Ga. App. 445, 447-448 (565 SE2d 603) (2002); *McKnight*, 358 F3d at 857-859; *Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F2d 931, 934-935 (10th Cir. 1992); *Standard Sec. Life Ins. Co. of New York v. West*, 267 F3d 821, 823 (8th Cir. 2001); *Am. Health & Life Ins. Co. v. Heyward*, 272 FSupp.2d 578, 581-582 (D. S.C. 2003); *Nat. Home Ins. Co. v. King*, 291 FSupp.2d 518, 529-530 (E.D. Ky. 2003).

insurance dispute is not an issue that goes to the merits of the parties' underlying dispute, but instead is an issue of arbitrability that may be decided by a court.[15]

For the foregoing reasons, we conclude that the MFA precludes the FAA from requiring the arbitration of disputes involving insurance.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 6, 2005 —
RECONSIDERATION DENIED JUNE 30, 2005.

*Ralph F. Simpson*, for appellants.

*Lambert, Floyd & Conger, George C. Floyd, David G. Crockett*, for appellee.

*Kirbo, Kendrick & Bell, Ben Kirbo*, amicus curiae.

---

[15] See *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U. S. 395 (87 SC 1801, 18 LE2d 1270) (1967) (When parties have entered an arbitration agreement, issues that go to the merits of a dispute are for an arbitrator and issues that are a defense to arbitrability may be resolved by a court.).