PRYOR, Circuit Judge,
concurring:
I concur in the result, but for a different reason. I agree with the majority that in Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009), the Supreme Court clarified that state law, not federal law, governs whether a nonparty can enforce an arbitration clause against a party, but I doubt the conclusion of the majority that, under Georgia law, equitable estoppel does not apply. I would resolve this appeal on the same ground as the district court: that the Georgia Arbitration Act bars enforcement of the arbitration clause in this dispute about insurance.
The majority opinion concludes that “a plaintiffs claims must directly, not just indirectly, be based on the contract con-taming the arbitration clause in order for equitable estoppel to compel arbitration of those claims,” Maj. Op. at 1172, but I am less confident that the Georgia courts apply that rule, regardless of its logical appeal. Georgia courts have applied several times a rule articulated by this Court in MS Dealer Service Corp. v. Franklin: “When each of a signatory’s claims against a nonsignatory ‘makes reference to’ or ‘presumes the existence of the written agreement, the signatory’s claims ‘arise[] out of and relate[ ] directly to the [written] agreement,’ and arbitration is appropriate.” 177 F.3d 942, 947 (11th Cir.1999) (alterations in original) (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 758 (11th Cir.1993)). See Order Homes, LLC v. Iverson, 300 Ga.App. 332, 685 S.E.2d 304, 310 (2009); Price v. Ernst & Young, LLP, 274 Ga.App. 172, 617 S.E.2d 156, 159-60 (2005); LaSonde v. CitiFinancial Mortg. Co., 273 Ga.App. 113, 614 S.E.2d 224, 226 (2005); Lankford v. Orkin Exterminating Co., 266 Ga.App. 228, 597 S.E.2d 470, 474 (2004); Autonation Fin. Servs. Corp. v. Arain, 264 Ga.App. 755, 592 S.E.2d 96, 99-101 (2003). Life of the South bases its argument on this rule.
The Court of Appeals of Georgia applied equitable estoppel in Arain, 592 S.E.2d at 99-101, and held that a seller of a theft protection program could cdmpel arbitra *1176 tion even though it was not a signatory to the contract containing the arbitration provision. The plaintiff in Arain bought a car and financed both the car and the theft protection program through an installment sales contract containing an arbitration provision. Id. at 97. The court looked to factors also present in this appeal: “The complaint asserts that [Arain’s] purchase of the [theft protection program] occurred ‘[i]n the course of [the] sale of the car to him,” id. at 101 (third alteration in original), and “[t]hat charge was financed through the installment contract, which, in effect, facilitated the [theft protection program] purchase by allowing Arain to pay in installments. And Arain is seeking to recover the finance charges he paid under that contract,” id. The court explained that “Arain’s claims are sufficiently related to the arbitration contract in this case to justify equitable estoppel,” id., because the claims “ ‘make[ ] reference to and presume[] the existence of the [theft protection program] charge contained in the installment contract,” id. (quoting MS Dealer, 177 F.3d at 947-48); see also Price, 617 S.E.2d at 160.
Arain suggests that Georgia courts might conclude that the Lawsons are equitably estopped from asserting the nonsignatory status of Life of the South to avoid arbitration. The Lawsons’ complaint “makes reference to” and “presumes the existence of’ the loan agreement. As the majority opinion correctly observes, the Lawsons’ complaint refers to the loan agreement several times and their claims depend on the existence of that agreement. The Lawsons allege that their damages include the “unearned premium that was not refunded,” and that premium was financed under the loan agreement. Besides the references to the loan agreement in the complaint, several other facts establish a connection between the two agreements: the loan agreement contains a section entitled “Optional Credit Insurance,” which the Lawsons signed to purchase a credit life insurance policy “under this Contract”; the loan agreement lists the amount of the premium paid by the Law-sons to purchase the insurance; the loan financed the payment of the premium; and the arbitration provision of the loan agreement states that it covers “any controversy or claim ... arising from or relating to this Contract,” including claims related to “any aspect of the sale of the vehicle involving any Buyer, Co-Buyer, Seller, or ... insurer of any of these persons.”
It is true, as the majority explains, that Arain sought to recover finance charges paid under his loan agreement, but the Lawsons’ complaint might be read that way too. In their requests for tort remedies, the Lawsons complain that they “have suffered special damages in the amount of the unearned premium that was not refunded, plus the interest on those sums.” It is not clear from the face of their complaint whether the phrase “the interest on those sums” refers to the interest charged under the loan agreement or some form of prejudgment interest under Georgia law.
It is also true, as the majority explains, that the alleged liability of Life of the South arose after the Lawsons had paid the amounts owed under the loan agreement, but Arain likewise sued the nonsignatory after Arain had paid the charges for the theft protection program that he alleged were excessive. Arain did not allege a breach of the loan agreement, and his complaint for damages against the non-signatory accrued after he had made the payments required by that agreement.
Even if the majority is correct that the relationship between the complaint and the contract containing the arbitration clause was more direct in Arain than the relationship between the Lawsons’ complaint and the loan agreement, that fact *1177 does not establish that Georgia courts would refuse to apply equitable estoppel in this appeal. The majority has not cited a Georgia precedent that held that the relationship between a complaint and an arbitration agreement was too indirect to allow a nonsignatory to enforce the arbitration agreement. The majority dismisses the language in Amin that supports the argument of Life of the South as dicta, but without a decision from a Georgia court that is directly on point, the dicta of Amin tells us more about how a Georgia court would decide this appeal than our supposition.
The majority concedes that the Law-sons’ complaint makes reference to and presumes the existence of the loan agreement, Maj. Op. at 1172, but the majority concludes that the Lawsons’ complaint is nevertheless not tied directly to that agreement. The problem with that conclusion is that the decisions of the Georgia courts state that, when a complaint makes reference to and presumes the existence of an agreement with an arbitration clause, then the complaint is related to the agreement. The Georgia precedents do not describe “directly related” issue as a separate element of equitable estoppel. The Georgia precedents instead describe the test of direct relation as being satisfied by the formulation from MS Dealer about referring to and presuming the existence of the arbitration agreement: that is, the complaint “arise[s] out of and relate[s] directly to the [written] agreement,” when the complaint “make[s] reference to or presumefs] the existence of the written agreement,” with the arbitration clause, 177 F.3d at 947 (third alteration in original). See Iverson, 685 S.E.2d at 310; Price, 617 S.E.2d at 160; LaSonde, 614 S.E.2d at 226; Arain, 592 S.E.2d at 99-101.
Regardless of whether Georgia courts would apply equitable estoppel in this circumstance, Life of the South cannot compel arbitration for a different reason. Although the Federal Arbitration Act provides that agreements to arbitrate are ordinarily enforceable, 9 U.S.C. § 1 et seq., the Georgia Arbitration Act excepts from enforcement agreements to arbitrate disputes involving “contracts] of insurance,” Ga.Code Ann. § 9-9-2(c)(3). Because that state law “relates to the business of insurance,” the McCarranFerguson Act, 15 U.S.C. § 1012(b), makes it enforceable. In a decision where we addressed the intersection of these three statutes, we ruled that “the McCarran-Ferguson Act excepts § 9-9-2(c)(3) from preemption by the Federal Arbitration Act.” McKnight v. Chi. Title Ins. Co., 358 F.3d 854, 859 (11th Cir. 2004). Since McKnight, the Supreme Court of Georgia also has ruled that “the [McCarran-Ferguson Act] precludes the [Federal Arbitration Act] from requiring the arbitration of disputes involving insurance” in Georgia. Love v. Money Tree, Inc., 279 Ga. 476, 614 S.E.2d 47, 50 (2005).
Life of the South contends that the Georgia Arbitration Act applies only to arbitration provisions that appear in contracts for insurance, but the Georgia Supreme Court has not applied the Georgia Arbitration Act that narrowly. The arbitration agreement in Love appeared in a loan agreement and not in a separate “Voluntary Insurance Election Form,” id. at 48, but the Georgia Supreme Court ruled that the Georgia Arbitration Act applied. The court explained that the Georgia Arbitration Act “provides that agreements to arbitrate disputes regarding ‘contracts of insurance’ are invalid in Georgia,” id. at 49, and the Act applies to “arbitration of disputes involving insurance,” id. at 50. Like Love, this dispute too involves insurance, and Georgia courts would apply the Georgia Arbitration Act even though the *1178 arbitration provision does not appear in the contract of insurance.
Life of the South also argues that the arbitration agreement has a choice-of-law provision that states that the Federal Arbitration Act will govern arbitration of any disputes, but no court has ever held that a choice-of-law provision can override a state law barring arbitration that is enforceable under the McCarran-Ferguson Act. The choice of law in an unenforceable agreement to arbitrate is irrelevant. Life of the South cannot have its cake in the form of the arbitration agreement and eat it too by avoiding application of the McCarran-Ferguson Act. I agree with the district court that Georgia law prohibits arbitration of this dispute involving insurance.