[No. 87644-4.   En Banc.]
Argued October 25, 2012.      Decided January 17, 2013.

THE DEPARTMENT OF TRANSPORTATION, *Respondent*, v. JAMES
RIVER INSURANCE COMPANY, *Appellant*.

*Kara R. Masters* (of *Skellenger Bender PS*); and *Joseph D. Hampton* and *Bridget T. Schuster* (of *Betts, Patterson & Mines PS*), for appellant.

*Robert W. Ferguson, Attorney General, A. Richard Dykstra,* of *Friedman Rubin, Special Assistant,* and *Richard A. Fraser III* and *Robert A. Hyde, Assistants,* for respondent.

*Laura Foggan, Theodore A. Howard,* and *Thomas M. Jones* on behalf of American Insurance Association; Complex Insurance Claims Litigation Association; National Union Fire Insurance Company of Pittsburgh, PA; and American Home Assurance Company, amici curiae.

¶1 C. JOHNSON, J. — This case involves a challenge to a trial court's order denying a motion to compel arbitration of an insurance coverage dispute. James River Insurance Company issued two "surplus line" insurance policies under which the Washington State Department of Transportation (WSDOT) claims coverage. James River sought to compel arbitration of the coverage dispute pursuant to the insurance policies' arbitration clauses. WSDOT opposed arbitration and filed a motion for declaratory judgment, arguing that the arbitration clauses are unenforceable under RCW 48.18.200(1)(b), which prohibits insurance contracts from "depriving the courts of this state of the jurisdiction of action against the insurer," and under RCW 48.15.150(1), which requires that "an unauthorized insurer must be sued in the superior court of the county in which the cause of action arose." In addition, WSDOT argued that the McCarran-Ferguson Act, 15 U.S.C. § 1012, shields the statutes from preemption by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-14. The trial court agreed with WSDOT and denied James River's motion to compel arbitration. James River appealed and we granted direct review. We affirm.

FACTS

¶2 The facts in this case are largely uncontested. James River issued two insurance policies to Scarsella Brothers Inc. that provided coverage for certain liability related to Scarsella's work on a highway project for WSDOT, effective between 2008-2011. Scarsella requested that James River add WSDOT as an insured under the policies, which was done.

¶3 The underlying claims against WSDOT arose out of a traffic accident in 2009 that occurred at or near Scarsella's highway project. The representatives of those persons killed or injured in the accident filed suit in King County Superior Court. The plaintiffs later amended their complaint to include Scarsella as a defendant. WSDOT sent a letter to Scarsella tendering its request for a defense in response to the suit under the insurance policies. Scarsella forwarded the tender to James River. James River accepted WSDOT's tender under a reservation of all rights under the policies. James River also informed WSDOT that the policies contained mandatory arbitration provisions and demanded arbitration of the parties' coverage disputes. The arbitration clauses in the insurance policies state in part:

BINDING ARBITRATION

. . . .

Should we and the insured disagree as to the rights and obligations owed by us under this policy, including the effect of any applicable statutes or common law upon the contractual obligations otherwise owed, either party may make a written demand that the dispute be subjected to binding arbitration.

Clerk's Papers (CP) at 301.

¶4 On September 1, 2010, James River attempted to initiate arbitration pursuant to the binding arbitration provisions. WSDOT objected and filed a declaratory judgment action against James River, seeking a declaration that the arbitration clauses were void. James River asserted a counterclaim for declaratory judgment, requesting that the trial court find the arbitration provisions binding and enforceable. On January 28, 2011, James River filed a motion for summary judgment and for an order compelling arbitration. That same day, WSDOT filed a motion to bar initiation of arbitration proceedings.

¶5 On May 20, 2011, the trial court heard the parties' arguments and entered an order granting WSDOT's motion and denying James River's motion. In rendering its deci-

sion, the trial court held the arbitration clause was barred by RCW 48.18.200 and RCW 48.15.150. The trial court further held that these statutes were not preempted by the FAA based on "reverse preemption" under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015. Because the court rendered the arbitration clauses void, it did not reach the argument raised by WSDOT that the arbitration clauses did not actually become part of the insurance contract between the parties.[1] James River appealed, and we granted direct review.

## ISSUES

¶6 1. Do RCW 48.18.200 and RCW 48.15.150 prohibit binding arbitration clauses in surplus line insurance contracts?

¶7 2. If so, does the McCarran-Ferguson Act shield RCW 48.18.200 and RCW 48.15.150 from preemption by the FAA?

## ANALYSIS

¶8 Statutory interpretation is a question of law that is reviewed de novo. *Kruger Clinic Orthopaedics, LLC v. Regence BlueShield*, 157 Wn.2d 290, 298, 138 P.3d 936 (2006).

### RCW 48.18.200

¶9 James River argues that the trial court erred in determining that the arbitration clause is unenforceable under RCW 48.18.200(1)(b), which prohibits any agreement in insurance contracts "depriving the courts of this state of

---

[1] As such, this argument is revived in this appeal. WSDOT requests that even if this court concludes that binding arbitration agreements are permissible under RCW 48.18.200 and RCW 48.15.150, that this case be remanded to the trial court to decide the issue of whether the arbitration clauses became part of the insurance contract between WSDOT and James River. Because we affirm the trial court's ruling that binding arbitration agreements are unenforceable in insurance contracts, we need not address this issue.

the jurisdiction of action against the insurer." James River argues that an interpretation that arbitration agreements deprive the courts of jurisdiction is contrary to the modern view of arbitration as well as the historical understanding of arbitration in Washington. It further argues that because the statute does not invalidate agreements to arbitrate, the FAA and the McCarran-Ferguson Act are not implicated. WSDOT responds that the binding arbitration clause in this insurance contract violates RCW 48.18.200 because the clause deprives the court of full jurisdiction to determine the merits of the parties' claims. WSDOT further argues that the federal policy in favor of arbitration expressed in the FAA does not preempt this statute because the McCarran-Ferguson Act protects state laws regulating "the business of insurance" from federal preemption. 15 U.S.C. § 1012(b).

■ ■ ¶10 We must first determine whether RCW 48.18.200 renders arbitration agreements in insurance contracts void. RCW 48.18.200 applies to insurance contracts generally and provides:

(1) No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement

(a) requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country; or

(b) *depriving the courts of this state of the jurisdiction of action against the insurer*; or

(c) limiting right of action against the insurer to a period of less than one year from the time when the cause of action accrues in connection with all insurances other than property and marine and transportation insurances. In contracts of property insurance, or of marine and transportation insurance, such limitation shall not be to a period of less than one year from the date of the loss.

(2) Any such condition, stipulation, or agreement in violation of this section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.

RCW 48.18.200 (emphasis added). This case primarily raises an issue of statutory interpretation. Our objective when interpreting a statute is to discern and implement the intent of the legislature. We first attempt to discern the plain meaning of the statute. If a statute is ambiguous, we resort to statutory construction, legislative history, and relevant case law in order to resolve the ambiguity. *Anthis v. Copland*, 173 Wn.2d 752, 756, 270 P.3d 574 (2012).

¶11 Here, both parties agree that the term "jurisdiction" is susceptible to multiple meanings. Also, as WSDOT points out, the term "action" is context-sensitive where it relates to arbitration. Br. of Resp't at 10. Thus, the meaning of RCW 48.18.200(1)(b) prohibiting agreements "depriving the courts of this state of the jurisdiction of action against the insurer" is seemingly susceptible to multiple meanings. One meaning, as suggested by WSDOT, is that this is an antiarbitration provision. WSDOT suggests that the legislature intended to prohibit mandatory binding arbitration clauses in insurance contracts because such agreements deprive Washington policyholders of the right to bring an original action against the insurer in the courts of this state. Another meaning, as suggested by James River, is that this is a forum selection provision. James River suggests that the legislature intended to prohibit forum selection clauses in insurance contracts that designate a forum outside the state as the sole forum for actions against the insurer because such agreements deprive Washington policyholders of the right to bring an action against the insurer in the courts of this state.

¶12 A review of the case law surrounding the period when the statute was first enacted in 1911 and later revised in 1947 is not particularly helpful in determining

the legislative intent.[2] James River argues that the statutory provision is not an antiarbitration provision because the legislature did not view arbitration as depriving the courts of "jurisdiction" when it adopted RCW 48.18.200. Rather, James River contends that the notion that arbitration "deprives courts of jurisdiction" is rooted in judicial hostility to *common law* arbitration. It further argues that by the time RCW 48.18.200 was originally enacted in 1911, the legislature had already displaced common law arbitration in Washington by enacting statutory arbitration in 1869, which is evidence that the legislature did not view arbitration as depriving the courts of "jurisdiction." In support of this proposition, James River points to our decision in *Dickie Manufacturing Co. v. Sound Construction & Engineering Co.*, 92 Wash. 316, 319, 159 P. 129 (1916), in which we said that the arbitration statute contained "positive provisions *giving the court jurisdiction* to adopt, modify, and enforce the award." (Emphasis added.) However, James River's reliance on the historical and modern view of arbitration is not particularly helpful here because, even if we accepted James River's argument that arbitration does not deprive the courts of this state of "jurisdiction," this determination does not end our inquiry.

¶13 As the trial court noted, "It is important in reading the section as a whole that more than just the word 'jurisdiction' be considered. Instead, the entire phrase 'jurisdiction of action against the insurer' is the appropriate reading of that subsection in order to give meaning to the entire section." Verbatim Report of Proceedings at 36. WSDOT contends that the full phrase "jurisdiction of action against the insurer" demonstrates the legislature's intent to protect the right of policyholders to bring an *original action* against the insurer in the courts of this state. WSDOT asserts that James River does not offer an interpretation that would give effect to the full phrase "jurisdic-

---

[2] As early as 1869, the territorial legislature enacted a statute formally adopting the scope and means of judicial review of arbitration decisions.

tion *of action against the insurer"* as used in RCW 48.18.200(1)(b). In response, James River simply asserts that "jurisdiction" is no different than "jurisdiction of action" and that there is no support in the case law for WSDOT's distinction. Reply Br. at 3-4.

¶14 But as WSDOT correctly points out, we have in fact recognized a distinction between the court's jurisdiction in an original action as compared with the court's jurisdiction in a special proceeding to confirm an arbitration award. *See Price v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 490, 946 P.2d 388 (1997). In Price, we recognized that in a special proceeding to confirm an arbitration award, the jurisdiction of the court is limited. We explained that

> [a]lthough a party may apply to the court to confirm an arbitration award, *that is not the same as bringing an original action to obtain a monetary judgment.* A confirmation action is no more than a motion for an order to render judgment on the award previously made by the arbitrators pursuant to contract. If the court does not modify, vacate, or correct the award, the court exercises a *mere ministerial duty* to reduce the award to judgment.

*Price*, 133 Wn.2d at 497 (emphasis added) (citations omitted).

¶15 Likewise, in *Kruger*, we recognized a distinction between the power of the court in an original action as compared with the limited power of the court under former Washington arbitration act (WAA).[3] In that case, we were considering whether RCW 48.43.055 and WAC 284-43-322 prohibited binding arbitration agreements in contracts between insurers and health care providers. The WAC regulation voided any contractual provision that required alternative dispute resolution between insurers and providers "to the exclusion of judicial remedies." WAC 284-43-322(4). The insurers argued that the arbitration clauses were

---

[3] The case was decided prior to the repeal of former chapter 7.04 RCW and the subsequent enactment of chapter 7.04A RCW. *See* Laws of 2005, ch. 433, § 50.

consistent with that requirement because the providers could seek judicial review of the arbitration award under former WAA. We rejected that argument and concluded that the binding arbitration agreements deprived the health care providers of the " 'judicial remedies' " intended in the regulation because they prevented the providers from commencing " *'an action to litigate the dispute.'* " *Kruger,* 157 Wn.2d at 305 (quoting Kruger CP at 59). In reaching this conclusion, we noted that review under the act would be limited to the face of the award and we rejected the view that " 'judicial remedies' " are "nothing more than the limited judicial review afforded under the WAA." *Kruger,* 157 Wn.2d at 306.

¶16 In this case, we agree with WSDOT that the meaning of RCW 48.18.200(1)(b) is properly discerned from looking at the entire phrase "jurisdiction of action against the insurer." We further agree that this phrase demonstrates the legislature's intent to protect the right of policyholders to bring an original "action against the insurer" in the courts of this state. Accepting James River's argument that the limited "jurisdiction" provided in the uniform arbitration act, chapter 7.04A RCW, satisfies RCW 48.18-.200(1)(b) would frustrate the legislature's intent because as we explained in *Price* and *Kruger,* binding arbitration agreements deprive our state's courts of the jurisdiction they would normally possess in an original action by depriving them of the jurisdiction to review the *substance* of the dispute between the parties. And as WSDOT correctly notes, assuring the right to review the substance of disputes between insurers and insureds helps assure the protection of Washington law to Washington insureds as provided in RCW 48.18.200(1)(a). Thus, RCW 48.18.200(1)(b) is properly interpreted as a prohibition on binding arbitration agreements. Moreover, this interpretation is consistent with the interpretation of other jurisdictions that have analyzed

identical provisions to RCW 48.18.200.[4] *See Macaluso v. Watson*, 171 So. 2d 755, 757 (La. Ct. App. 1965) (holding the statutory language "depriving the courts of this state of the jurisdiction of action against the insurer" prohibits binding arbitration agreements); *see also Berrocales Gómez v. Tribunal Superior*, 102 P.R. 224 (1974) (same).

¶17 Therefore, we hold that unless the legislature specifically provides otherwise, RCW 48.18.200 prohibits binding arbitration agreements in insurance contracts. Because the arbitration agreements in this case were predispute binding arbitration agreements, we hold that the arbitration agreements in this case are unenforceable.

### *RCW 48.15.150*

¶18 Because we conclude that RCW 48.18.200 prohibits binding arbitration agreements in insurance contracts, we need not reach the issue of whether RCW 48.15.150 prohibits arbitration agreements in order to resolve this case.

### *Reverse Preemption*

¶19 Because RCW 48.18.200(1)(b) prohibits binding arbitration agreements in insurance contracts, we must determine whether the McCarran-Ferguson Act shields this statute from preemption by the FAA. Generally, when a state enacts a statute of general applicability prohibiting arbitration agreements, the statute may be inconsistent with the FAA and, if so, the FAA arguably preempts that state law. *See AT&T Mobility, LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). However, there is an exception to this general rule when the state

---

[4] As James River points out, there seems to be an apparent split between the Louisiana courts and the First Circuit Court of Appeals' interpretation of Massachusetts law on whether the language "depriving the courts of jurisdiction of action" prohibits arbitration agreements. *See DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000). However, we find that the Louisiana court's resolution of the issue is more persuasive than the First Circuit's and apply similar reasoning in this case.

statute was enacted "for the purpose of regulating the business of insurance" within the meaning of the McCarran-Ferguson Act. The McCarran-Ferguson Act provides in part:

> No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance: *Provided,* That [the federal antitrust statutes] shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

15 U.S.C. §1012(b). Because the FAA does not specifically relate to the business of insurance, the parties dispute only whether RCW 48.18.200(1)(b) regulates the "business of insurance." If it does, then the McCarran-Ferguson Act "reverse preempts" the FAA, shielding the statute from invalidation.

¶20 In *Kruger*, we articulated when a state law regulates the "business of insurance" under the meaning of the McCarran-Ferguson Act. There, we held that RCW 48.43.055 and WAC 284-43-322, which prohibit binding arbitration agreements in contracts between insurers and health care providers, regulated the "business of insurance." In reaching our decision, we noted the rule, articulated by the United States Supreme Court, that a statute " ' "aimed at protecting or regulating" the performance of an insurance contract . . . is a law "enacted for the purpose of regulating the business of insurance," within the meaning of the first clause of § 2(b).' " *Kruger*, 157 Wn.2d at 301 (quoting *Secs. & Exch. Comm'n v. Nat'l Secs., Inc.*, 393 U.S. 453, 460, 89 S. Ct. 564, 21 L. Ed. 2d 668 (1969); *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 505, 113 S. Ct. 2202, 124 L. Ed. 2d 449 (1993)). Applying this rule to the facts in *Kruger*, we held that "RCW 48.43.055 and WAC 284-43-322 protect, at least indirectly, the promises that carriers make to their insureds in their subscriber agreements." *Kruger*, 157 Wn.2d at 302. Accordingly, we held that the McCarran-Ferguson Act shields

RCW 48.43.055 and WAC 284-43-322 from preemption by the FAA.

¶21 In this case, WSDOT argues that RCW 48.18-.200(1)(b) regulates the "business of insurance" because this statute regulates the insurer-insured relationship *even more* directly than the statute and regulation in *Kruger*, which did not relate to the insurance contract itself. Moreover, WSDOT points out that numerous cases from other jurisdictions have concluded that state statutes prohibiting binding arbitration agreements in the insurance context regulate the "business of insurance."[5] In response, James River argues that RCW 48.18.200(1)(b) does not regulate "the business of insurance" because this statute is a choice of forum provision, which does not concern the relationship between the insurer and the insured.

¶22 As noted in the preceding discussion, RCW 48.18-.200(1)(b) is not merely a forum selection provision as James River maintains, but rather a provision prohibiting binding arbitration agreements in insurance contracts. As such, we hold that this provision regulates the "business of insurance" because it is aimed at protecting the performance of an insurance contract by ensuring the right of the policyholder to bring an action in state court to enforce the contract. This determination is consistent with our holding in *Kruger* as well as the holdings of numerous courts in other jurisdictions. Therefore, we conclude that RCW 48.18.200(1)(b) is shielded from preemption by the FAA under the McCarran-Ferguson Act.

---

[5] *See* Br. of Resp't at 45 (citing *Allen v. Pacheco*, 71 P.3d 375 (Colo. 2003); *Am. Health & Life Ins. Co. v. Heyward*, 272 F. Supp. 2d 578 (D.S.C. 2003); *Cont'l Ins. Co. v. Equity Residential Props. Trust*, 255 Ga. App. 445, 565 S.E.2d 603 (2002); *Pagarigan v. Superior Court*, 102 Cal. App. 4th 1121, 126 Cal. Rptr. 2d 124 (2002); *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490 (5th Cir. 2006); *Standard Sec. Life Ins. Co. of N.Y. v. West*, 267 F.3d 821 (8th Cir. 2001); *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931 (10th Cir. 1992); *McKnight v. Chi. Title Ins. Co.*, 358 F.3d 854 (11th Cir. 2004)).

CONCLUSION

¶23 We affirm the trial court's order denying James River's motion to compel arbitration.

MADSEN, C.J.; OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ.; and CHAMBERS, J. PRO TEM., concur.

Reconsideration denied March 15, 2013.