FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 JUL -3 AM 8: 39

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| OAK HARBOR FREIGHT LINES,<br>INC., a Washington corporation, | ) <br> ) <br> ) | No. 75147-6-I |
| Respondent, | ) <br> ) | |
| v. | ) <br> ) | |
| XL INSURANCE AMERICA, INC.,<br>a foreign insurance company, | ) <br> ) <br> ) | UNPUBLISHED OPINION |
| Appellant. | ) <br> ) | FILED: July 3, 2017 |

VERELLEN, C.J. — From 2006 until 2010, Oak Harbor Freight Lines, Inc.

purchased workers' compensation insurance from XL Insurance America, Inc. (the

policies). In consideration of the policies, XL Insurance required Oak Harbor to enter

into an "Insurance Program Agreement" and post a letter of credit in favor of XL

Insurance as collateral to secure Oak Harbor's payment and reimbursement

obligations under the policies. In 2010, due to changes in FDIC policy, the bank

could no longer guarantee the $3.2 million letter of credit Oak Harbor posted as

collateral, and XL Insurance drew down the entire balance of the letter of credit. XL

Insurance ceased providing coverage to Oak Harbor in 2011.

In 2015, after unsuccessfully negotiating the return of the excess collateral,

Oak Harbor filed a lawsuit against XL Insurance in King County Superior Court. XL

Insurance moved to dismiss the lawsuit and to compel binding arbitration in New

York pursuant to the Insurance Program Agreement's arbitration provisions. Oak Harbor opposed arbitration, arguing the arbitration provisions were unenforceable under RCW 48.18.200(1)(b), which prohibits insurance contracts from "depriving the courts of this state of the jurisdiction of action against the insurer." The court found that the Insurance Program Agreement was "part and parcel" of the contract of insurance and therefore, the arbitration provisions were void and unenforceable under RCW 48.18.200(1)(b).[1]

XL Insurance argues the Insurance Program Agreement is fully integrated and unrelated to the policies, and therefore is not subject to RCW 48.18.200(1)(b). But absent the Insurance Program Agreement and required collateral to secure Oak Harbor's payment and reimbursement obligations under the policies, XL Insurance would not have agreed to assume liability for payment of workers' compensation claims made by Oak Harbor employees. Because both the Insurance Program Agreement and the policies expressly depend upon provisions contained in the other, the integration clauses are not operative. The Insurance Program Agreement is part and parcel of the insurance contract and therefore, the arbitration clause is not enforceable.

Therefore, we affirm.

FACTS

In 2006, Oak Harbor purchased a workers' compensation and employers' liability policy from XL Insurance and renewed the policies each year through 2010. Under the policies, XL Insurance assumed liability for payment of workers'

---

[1] Report of Proceedings (RP) (Apr. 1, 2016) at 32.

compensation claims made by Oak Harbor employees, and Oak Harbor assumed a contractual obligation to reimburse XL Insurance for any claims paid up to the deductible amount of $350,000 per claim.

In consideration of the policies, XL Insurance required Oak Harbor to post collateral in the form of a $3.2 million letter of credit to secure Oak Harbor's payment and reimbursement obligations for the deductible.[2] This collateralization requirement was set forth in an "Insurance Program Agreement" and an attached "Schedule" (i.e. "Plan Specifications"), both of which became effective on July 1, 2006, the same date the policy issued. The Schedule attached to the Insurance Program Agreement expressly states that the *"[p]olicies shall be included within the [Insurance] Program [Agreement]* for the Program Period."[3] The Schedule further states, "*This Schedule*

---

[2] The Insurance Program Agreement states in pertinent part:

WHEREAS, *[Oak Harbor] has applied for insurance programs* as described in the Schedule "Plan Specifications" for each Program Period subject to this Agreement ("Plan Specification");

WHEREAS, [XL Insurance] has agreed to issue Policies during the term of this Agreement as described in the Plan Specifications attached as a Schedule to this Agreement;

WHEREAS, [Oak Harbor] and [XL Insurance] intend to outline the scope, description and structure for each Program Period, and to set forth [Oak Harbor]'s obligations to [XL Insurance] to make payments and provide security for its obligations.

NOW THEREFORE, in consideration for the issuance of the Policies by [XL Insurance], [Oak Harbor] and [XL Insurance] agree as follows: . . . .

Clerk's Papers (CP) at 282 (emphasis added).

[3] CP at 298 (emphasis added).

3

. . . attached to and together with all prior Schedules, if any, *shall form a part of the Insurance Program Agreement.*"[4]

The Insurance Program Agreement states that binding arbitration shall be "the sole remedy for the resolution of disputes" between the parties under the Insurance Program Agreement "or any other agreement between them."[5] The Insurance Program Agreement further states the "board of arbitration will have *complete and exclusive jurisdiction* over the entire matter in dispute, including any question as to its arbitrability."[6] Finally, the Insurance Program Agreement states "the rights of the parties to this agreement shall be governed by and construed in accordance with the laws of the state of New York."[7]

In 2010, due to changes in FDIC policy, U.S. Bank could no longer guarantee the Frontier Bank letter of credit Oak Harbor posted as collateral and XL Insurance drew down the entire balance of the $3.2 million letter of credit. When XL Insurance refused to return some of the collateral to reflect its actual claims exposure, Oak Harbor stopped making monthly premium payments. XL Insurance ceased providing insurance to Oak Harbor in 2011. XL Insurance still holds excess collateral as security for payment obligations that may arise due to claims under the policies.[8]

---

[4] CP at 301 (emphasis added).

[5] CP at 292.

[6] CP at 292 (emphasis added).

[7] CP at 295.

[8] See CP at 7 ("As of November 11, 2014, XL Insurance stated that it was still holding $752,648.84 in cash from the Frontier Bank letter of credit.").

In 2015, Oak Harbor sued XL Insurance in King County Superior Court for breach of the duty of good faith and fair dealing, conversion, insurance bad faith, Washington Consumer Protection Act violations, and California Unfair Competition Law violations.[9] XL Insurance moved to dismiss the lawsuit and compel binding arbitration in New York pursuant to the Insurance Program Agreement's arbitration provisions. Oak Harbor opposed XL Insurance's motion, arguing that arbitration and forum selection provisions were unenforceable under RCW 48.18.200(1)(b), which prohibits arbitration provisions in insurance contracts.

The superior court agreed with Oak Harbor and denied XL Insurance's motion:

> It's clear to this court, given all the references in the [Insurance Program Agreement] to the insurance policy, that this is part and parcel of the insurance policy. It facilitates the coverage provided in the insurance policy. . . . It's . . . part of . . . Oak Harbor's insurance policy with XL.[10]

XL Insurance appeals.

## ANALYSIS

XL Insurance argues the superior court erred in denying its motion to compel arbitration. Relying heavily on the presence of integration clauses, XL Insurance argues the Insurance Program Agreement is fully integrated and unrelated to the policies and therefore is not subject to the RCW 48.18.200(1)(b) prohibition on arbitration provisions in insurance contracts. We disagree.

Under RCW 48.18.200(1)(b), "No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in

---

[9] CP at 1-11.

[10] RP (Apr. 1, 2016) at 32.

this state, shall contain any condition, stipulation, or agreement . . . depriving the courts of this state of the jurisdiction of action against the insurer." In <u>Department of Transportation v. James River Insurance Co.</u>, our Supreme Court expressly analyzed whether RCW 48.18.200 "render[ed] arbitration agreements in insurance contracts void."[11] The court determined the phrase "jurisdiction of action against the insurer" demonstrated "the legislature's intent to protect the right of the policyholders to bring an original 'action against the insurer' in the courts of this state."[12] The court explained that to compel arbitration under an insurance contract arbitration clause would "frustrate the legislature's intent because . . . binding arbitration agreements deprive our courts of the jurisdiction they would normally possess in an original action by depriving them of the jurisdiction to review the *substance* of the dispute between the parties."[13] "[A]ssuring the right to review the substance of disputes between insurers and insureds helps assure the protection of Washington law to Washington insureds as provided in RCW 48.18.200(1)(a)."[14]

We review the decision on a motion to compel arbitration de novo.[15] We may affirm the trial court on any basis supported by the record.[16]

---

[11] 176 Wn.2d 390, 395, 292 P.3d 118 (2013).

[12] <u>Id.</u> at 399.

[13] <u>Id.</u>

[14] <u>Id.</u>; <u>see</u> RCW 48.18.200(1)(a) (prohibiting insurance contracts containing any condition, stipulation, or agreement "requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.").

[15] <u>Saleemi v. Doctor's Assocs., Inc.</u>, 176 Wn.2d 368, 375, 292 P.3d 108 (2013); <u>Wiese v. CACH, LLC</u>, 189 Wn. App. 466, 473, 358 P.3d 1213 (2015).

[16] <u>Hoflin v. City of Ocean Shores</u>, 121 Wn.2d 113, 134, 847 P.2d 428 (1993).

Washington courts follow the "objective manifestation theory" of contract interpretation.[17] "Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement."[18]

"A contract may consist of one or several writings."[19]

"[T]he terms of agreement may be expressed in two or more separate documents, *some of these containing promises and statements as to consideration*, and others, such as deeds . . . embodying performances agreed upon rather than a statement of terms to be performed. *In every such case, these documents should be interpreted together*, each one assisting in determining the meaning intended to be expressed by the others."[20]

"Instruments which are part of the same transaction, relate to the same subject matter and are executed at the same time should be read and construed together as one contract."[21]

"An integrated contract is one where the parties intend a written document to be a final expression of their agreement."[22] It is generally a question of fact whether

---

[17] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

[18] Id.

[19] Kelley v. Tonda, 198 Wn. App. 303, 311, 393 P.3d 824 (2017) (citing Smith v. Skone & Connors Produce, Inc., 107 Wn. App. 199, 206, 26 P.3d 981 (2001)).

[20] Id. (emphasis added) (quoting 5 MARGARET N. KNIFFEN, CORBIN ON CONTRACTS § 24.21, at 216 (1998)).

[21] Turner v. Wexler, 14 Wn. App. 143, 146, 538 P.2d 877 (1975); see Kelley, 198 Wn. App. at 311 ("All writings that are part of the same transaction are interpreted together."); see also Kenney v. Read, 100 Wn. App. 467, 474, 997 P.2d 455, amended on denial of reconsideration, 4 P.3d 862 (2000) ("When several instruments are made as part of one transaction, they will be read together and construed with reference to each other.").

[22] King v. Rice, 146 Wn. App. 662, 670 n.17, 191 P.3d 946 (2008).

the parties intended an integrated contract.[23] While boilerplate integration clauses can provide evidence that parties to a contract intended a fully integrated agreement, such clauses are not operative if they are premised on incorrect statements of fact.[24] A court may consider evidence of negotiations and circumstances surrounding the formation of the contract and, if the agreement is not completely integrated, additional terms may be proved to the extent they are consistent with the written terms.[25]

Contrary to XL Insurance's argument, neither the Insurance Program Agreement nor the policies are truly fully integrated. The parties' objective manifestation of intent in executing these documents on the same date was for XL Insurance to assume liability for payment of workers' compensation claims made by Oak Harbor employees. Oak Harbor expressly signed the Insurance Program Agreement in consideration of XL Insurance issuing the policies. Thus, absent the Insurance Program Agreement and required collateral to secure Oak Harbor's payment and reimbursement obligations under the policies, XL Insurance would not have agreed to assume liability. Moreover, provisions of the policies and the Insurance Program Agreement are interrelated. It is inconsistent to argue that the documents are truly integrated when they both depend upon provisions contained in the other.

---

[23] Emrich v. Connell, 1058 Wn.2d 551, 556, 716 P.2d 863 (1986).

[24] Denny's Rests., 71 Wn. App. at 203 ("Although the policy contains an integration clause, the courts of this state have repeatedly recognized that boilerplate integration clauses are inoperative if they are false; parties to a contract are not bound by incorrect statements of fact.").

[25] Id. at 202.

Specifically, XL Insurance attached endorsements to the policies giving XL Insurance the right to require Oak Harbor to provide security for its obligations under the policies. For example, the policies' "Large Deductible Endorsement" for California and Oregon includes a section listing remedies that extends to Oak Harbor's failure to provide adequate security:

> If you fail to reimburse us for any amounts as required by this endorsement, *or, if you fail to provide security in a form and amount acceptable to us, we may cancel this policy* for non-payment in accordance with the cancellation conditions.[26]

But the policies alone do not impose an obligation to provide security; they only specify a remedy for the failure to do so. The only provision actually requiring Oak Harbor to provide security is set forth in the Insurance Program Agreement:

> As security for the Insured's Obligations, and for performance of all of its obligations and duties hereunder, the Insured shall deliver to Company on or before the effective date of the Agreement, a letter of Credit or other collateral in an amount and form acceptable to Company ("The Collateral").[27]

The Insurance Program Agreement goes on to specify the details of the collateral required.[28]

Further, the Insurance Program Agreement expanded XL Insurance's rights under the policies. For example, the policies contained a general cancellation provision permitting either party to "cancel this policy" upon "advance written notice stating when the cancelation is to take effect."[29] Yet under the Insurance Program

---

[26] CP at 146, 153, 248, 262 (emphasis added).

[27] CP at 287 (emphasis added).

[28] See CP at 287-89.

[29] CP at 105.

Agreement, in the event Oak Harbor defaulted on any of its obligations, XL Insurance reserved the right to cancel any policy in force at the time of default, or unilaterally "issue an endorsement deleting the deductible or retrospective premium endorsement from the in force policy or policies, recalculate and re-bill in accordance with Company's full premium guaranteed cost rating plan."[30] XL Insurance's remedy under the Insurance Program Agreement to unilaterally modify the policies is inconsistent with fully integrated contracts.[31]

The Insurance Program Agreement also adopted definitions from the policies: "Unless otherwise provided in this Agreement or unless the context requires otherwise, *terms used in this Agreement shall have the meanings attributed to them in the Policies* or Company's applicable statistical or rating plans."[32] The documents' shared definitions is also inconsistent with unrelated, fully integrated contracts.

Finally, the Insurance Program Agreement purports to regulate *all* agreements between the parties, including the policies: "The parties agree that arbitration pursuant to the terms of [the Insurance Program Agreement] *is the sole remedy for the resolution of disputes between them under this Agreement or any other agreement between them.*"[33]

---

[30] CP at 290.

[31] Contrary to XL Insurance's explanation at oral argument, the provision in the policies that "We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance" is not authority for XL Insurance to make unilateral changes to the premiums imposed by the policies as a remedy for violations of the Insurance Program Agreement. CP at 104.

[32] CP at 285 (emphasis added).

[33] CP at 292 (emphasis added).

10

"[T]o the extent possible, where parts of the same writing are inconsistent they should be construed so as to harmonize with one another."[34] In substance, the Insurance Program Agreement, attached schedule, and the policies constitute the overall contract of insurance between the parties. The policies provide a remedy for Oak Harbor's failure to fulfill the security obligation imposed only in the Insurance Program Agreement. And the Insurance Program Agreement provides a remedy in the event Oak Harbor defaults on any of its obligations that includes unilaterally issuing an endorsement changing the premium structure of the policies; a material provision of the policies. Therefore, there is no true objective manifestation of intent for two fully integrated contracts. Because both the Insurance Program Agreement and the policies expressly depend on provisions contained in the other, the integration clauses are not operative.

To give effect to the parties' objective manifestation of intent, we agree with the superior court that the Insurance Program Agreement is "part and parcel" of the policies, and therefore, subject to the RCW 48.18.200(1)(b) prohibition on arbitration provisions in insurance contracts. Our conclusion harmonizes the contracts and is consistent with the purpose of RCW 48.18.200(1)(b) to guarantee the courts' ability to analyze and review the substance of disputes under the laws of Washington.[35]

Accordingly, we conclude the superior court did not err in denying XL Insurance's motion to compel binding arbitration.

---

[34] Turner v. Wexler, 14 Wn. App. 143, 146, 538 P.2d 877 (1975).
[35] James River, 176 Wn.2d at 399.

## *Attorney Fees*

Oak Harbor requests an award of attorney fees and costs on appeal.[36]

Attorney fees may be awarded to a litigant when authorized by contract, statute, or a recognized ground of equity.[37] Under the Insurance Program Agreement, XL Insurance "unconditionally and completely" agrees to indemnify Oak Harbor against any liabilities, obligations, costs or expenses, "including reasonable attorney's fees, incurred directly or indirectly" by Oak Harbor arising out of, or attributable in part to any act, error or omission of XL Insurance.[38] Therefore, Oak Harbor is entitled to attorney fees and costs on appeal.

Affirmed.

_____
Cox, J.

WE CONCUR:

_____
Trickey, J

---

[36] See RAP 18.1.

[37] Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).

[38] CP at 291-92.