**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIED PROFESSIONALS INSURANCE COMPANY, A Risk Retention Group, Inc., an Arizona corporation, *Plaintiff-Appellee*, <br><br> v. <br><br> MICHAEL SCOTT ANGLESEY; ELISEO GUTIERREZ; VERONICA GUTIERREZ, *Defendants-Appellants*. | No. 18-56513 <br><br> D.C. No. 8:14-cv-00665-CBM-SH <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted January 23, 2020
Pasadena, California

Filed March 12, 2020

Before:  Richard R. Clifton and Kenneth K. Lee, Circuit
Judges, and Frederic Block,[*] District Judge.

Opinion by Judge Clifton

---

[*] The Honorable Frederic Block, United States District Judge for the
Eastern District of New York, sitting by designation.

# SUMMARY[**]

## Preemption / Washington Law / Arbitration

The panel affirmed the district court's order compelling arbitration, and held that the Washington anti-arbitration statute was preempted by the federal Liability Risk Retention Act of 1986 ("LRRA") as it applied to risk retention groups chartered in another state.

The LRRA broadly preempts the authority of non-chartering states to regulate the operation of risk retention groups within their borders.  A Washington state statute, RCW § 48.18.200(1)(b), has been held to prohibit binding arbitration agreements in insurance contracts in that state.

The panel held that the federal McCarran-Ferguson Act, which generally protects state regulation of insurance, did not reverse-preempt the LRRA.  The panel also held that Washington's anti-arbitration statute offended the LRRA's preemption language and that no exception applied to save the law.  The panel concluded that the Washington statute was preempted by the LRRA as it applied to out of state risk retention groups.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Andrea J. Clare (argued), Telquist Mcmillen Clare, PLLC, Richland, Washington, for Defendants-Appellants.

Michael John Schroeder (argued), Michael J. Schroeder, P.C., Orange, California; Michael B. Kadish, The Kadish Law Group, P.C., Santa Monica, California; for Plaintiff-Appellee.

Joseph E. Deems, Deems Law Offices, APC, Encino, California, for Amicus Curiae National Risk Retention Association.

**OPINION**

CLIFTON, Circuit Judge:

The Liability Risk Retention Act of 1986 ("LRRA"), 15 U.S.C. § 3901 *et seq*., broadly preempts the authority of non-chartering states to regulate the operation of risk retention groups within their borders. A Washington state statute, RCW § 48.18.200(1)(b), has been held to prohibit binding arbitration agreements in insurance contracts in that state. *Dep't. of Transp. v. James River Ins. Co.*, 292 P.3d 118, 123 (Wash. 2013) ("[W]e hold that unless the legislature specifically provides otherwise, RCW 48.18.200 prohibits binding arbitration agreements in insurance contracts."). This case asks us to determine whether the LRRA preempts this provision as it applies to a risk retention group chartered in Arizona but doing business in Washington. We hold that it does.

## I.  Background

Plaintiff-Appellee Allied Professionals Insurance Company ("APIC") is a risk retention group, a liability insurance company owned by its insured members, chartered in Arizona and doing business in Washington. APIC previously insured Dr. Michael Scott Anglesey, a chiropractor in Washington. In December 2012, Dr. Anglesey provided chiropractic treatment to Mr. Eliseo Gutierrez which allegedly resulted in Mr. Gutierrez suffering a stroke. A few months later, Dr. Anglesey renewed his coverage with APIC but, in doing so, did not inform the company of the potential malpractice claim against him by Mr. and Mrs. Gutierrez. When Dr. Anglesey later notified APIC of this potential claim, the company advised him that it was denying coverage and rescinding his 2012 and 2013 insurance policies.

A year later, Dr. Anglesey informed APIC that he was planning to execute a consent judgment in favor of Mr. and Mrs. Gutierrez and to assign his rights against APIC to them. They had agreed to seek satisfaction on the judgment from APIC and not from Dr. Anglesey. APIC responded by demanding that all claims against APIC be sent to arbitration, pursuant to the arbitration clause in the underlying policies. Dr. Anglesey refused, and APIC filed this lawsuit on April 28, 2014, in the Central District of California against both Dr. Anglesey and Mr. and Mrs. Gutierrez (collectively, "Defendants").[1]

---

[1]  After the commencement of this action in district court, a Washington state court held the settlement agreement between Dr. Anglesey and Mr. and Mrs. Gutierrez to be reasonable and entered the stipulated judgment. Dr. Anglesey and Mr. and Mrs. Gutierrez have filed

The district court initially held that APIC did not have standing to bring the underlying action to compel Defendants to arbitrate. APIC appealed that decision to this court. We ruled that APIC had standing to bring the action against Dr. Anglesey to seek rescission of the policy and declaratory relief and had standing against all Defendants to compel arbitration of those claims. *Allied Prof'ls Ins. Co. v. Anglesey*, 680 Fed. Appx. 586 (9th Cir. 2017). On remand, the district court granted APIC's motion to compel arbitration, granted the motion to stay proceedings pending arbitration, denied a motion by Defendants to transfer venue to the Eastern District of Washington, and certified a controlling interlocutory question of law to this court under 28 U.S.C. § 1292(b). This court granted permission to appeal.

## II. Discussion

The question certified by the district court is "whether the Liability Risk Retention Act preempts Wash. Rev. Code § 48.18.200(1)(b) as applied to risk retention groups." "The district court's decision to grant or deny a motion to compel arbitration is reviewed de novo." *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004). We review conclusions of law de novo. *See Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1209 (9th Cir. 2017).

---

suit against APIC in the Eastern District of Washington based on APIC's denial of coverage. That suit is stayed pending a decision in this action.

*A. Regulatory Structure*

Congress enacted the Product Liability Risk Retention Act of 1981 ("PLRRA") as a response to "a seemingly unprecedented crisis in the insurance markets, during which many businesses were unable to obtain product liability coverage at any cost." *Wadsworth v. Allied Prof'ls Ins. Co.*, 748 F.3d 100, 102 (2d Cir. 2014). The Act supports the formation of risk retention groups, organizations "whose primary activity consists of assuming, and spreading all, or any portion, of the liability exposure of its group members." 15 U.S.C. § 3901(a)(4)(A). "Under the PLRRA, [a risk retention group] is permitted to provide product liability insurance in all states, free of insurance regulation by those states, if it complies with the insurance laws of the state it chooses as its 'chartering jurisdiction.'" *Nat'l Warranty Ins. Co. RRG v. Greenfield*, 214 F.3d 1073, 1075 (9th Cir. 2000) (quoting 15 U.S.C. § 3901(a)(4)(C)(i)). The PLRRA only covers risk retention groups in the product liability insurance market. In 1986, Congress enacted the LRRA to expand the benefits of the PLRRA to all commercial liability insurance.

The PLRRA and LRRA create a "tripartite" regulatory scheme for risk retention groups. *See Wadsworth*, 748 F.3d at 103. First, at the federal level, the statutes preempt state laws regulating the operation of risk retention groups. 15 U.S.C. § 3902(a)(1). Second, at the state level, they authorize the chartering state to regulate the groups' formation and operation. *Id.* Finally, also at the state level, they "sharply limit[] the secondary regulatory authority of nondomiciliary states over risk retention groups to specified, if significant, spheres." *Wadsworth*, 748 F.3d at 104; *see also* 15 U.S.C. §§ 3902(a)(1)(A)–(I); 15 U.S.C. § 3905. These regulatory divisions allow for "the efficient operation of risk retention

groups by eliminating the need for compliance with numerous non-chartering state statutes that, in the aggregate, would thwart the interstate operation [of] ... risk retention groups." H.R.Rep. No. 97-190, at 12 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1432, 1441.

## B.  The LRRA's Preemptive Effect

The answer to the question posed in this case is that the LRRA does preempt Washington's anti-arbitration statute, RCW § 48.18.200(1)(b), as it applies to risk retention groups chartered in other states. In reaching this conclusion, we follow the guide of our own precedent and that of the Second Circuit. *See Attorneys Liab. Prot. Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*, 838 F.3d 976 (9th Cir. 2016); *Wadsworth*, 748 F.3d 100.

### 1. The McCarran-Ferguson Act does not reverse-preempt the LRRA

Defendants first contend that the LRRA does not preempt the Washington anti-arbitration statute because it is "reverse-preempted" by the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq*. The McCarran-Ferguson Act is generally understood to protect state regulation of insurance. The Washington Supreme Court relied upon the McCarran-Ferguson Act in holding that RCW § 48.18.200(1)(b) is shielded from preemption by the Federal Arbitration Act. *James River Ins. Co.*, 292 P.3d at 124. Although our court has not opined on the precise issue of the relationship between the McCarran-Ferguson Act and the Federal Arbitration Act, we have repeatedly held that the LRRA is an exception to the McCarran-Ferguson Act's preference for state regulation of insurance. *See Attorneys*

*Liab. Prot. Soc'y, Inc.*, 838 F.3d at 982 n.4 ("We have squarely held that even though the McCarran-Ferguson Act reserves insurance regulation to the states, the LRRA was meant to be an exception for [risk retention groups]."); *Nat'l Warranty Ins. Co.*, 214 F.3d at 1077 ("Even with a general presumption that insurance law should ordinarily be regulated under state law, as reinforced by the McCarran-Ferguson Act, the language and purpose of the LRRA clearly indicate an intent to preempt state laws regulating [risk retention groups]."). Under our precedent, therefore, the McCarran-Ferguson Act does not "reverse-preempt" the LRRA.

### 2. The LRRA preempts Washington's anti-arbitration statute

Defendants next contend that the LRRA was specifically designed not to preempt all state laws, including ones like the Washington anti-arbitration statute. "When considering whether the LRRA preempts a state law, we first determine whether the challenged aspect of the state law offends the LRRA's broad preemption language. If so, we consider whether one of the LRRA's exceptions, which are contained in §§ 3902(a)(1) and 3905, applies to save the state law. If no exception applies, the law is preempted." *Attorneys Liab. Prot. Soc'y, Inc.*, 838 F.3d at 980 (citations omitted). We conclude that Washington's anti-arbitration statute offends the LRRA's preemption language and that no exception applies to save the law.

The LRRA states in relevant part, "[e]xcept as provided in this section, a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would – (1) make unlawful, or

regulate, directly or indirectly, the operation of a risk retention group[.]" 15 U.S.C. § 3902(a). Defendants argue this language ought to be construed narrowly. They contend that the LRRA only requires non-chartering states to refrain from passing laws which prevent risk retention groups from "operating" as an insurance company, and that the anti-arbitration statute in question does not concern their operation. In doing so, Defendants construe the LRRA as an anti-discrimination statute, one which is designed only to keep states from treating risk retention groups differently than other insurance companies.

Defendants' understanding of the statute is mistaken. The LRRA's preemption provision is broadly worded, and this court has repeatedly held that the LRRA has a broad preemptive effect. *See Attorneys Liab. Prot. Soc'y, Inc.*, 838 F.3d at 980–81 ("The LRRA …broadly preempts 'any [non-chartering] State law . . . .'" (quoting 15 U.S.C. § 3902(a)(1))); *All. of Nonprofits for Ins., Risk Retention Group v. Kipper*, 712 F.3d 1316, 1321 (9th Cir. 2013) ("The LRRA broadly preempts 'any State ... order to the extent that such ... order would ... make unlawful, or regulate, directly or indirectly, the operation of [an RRG].'" (quoting 15 U.S.C. § 3902(a)(1)) (alterations in original)); *Nat'l Warranty Ins. Co. RRG*, 214 F.3d at1077 ("[T]he language and purpose of the LRRA clearly indicate an intent to preempt state laws regulating [risk retention groups]."). This broad effect requires that the term "operation" be read generously. We have previously held that an Alaska statute which prohibited insurance providers from seeking reimbursement of fees incurred defending a non-covered claim regulated the "operation" of a foreign risk retention group. *See Attorneys Liab. Prot. Soc'y, Inc.*, 838 F.3d at 980. The state statute placed "a restriction on Alaska contracts that is 'not

contemplated by the LRRA, and that is not [precluded] by all other states,'" and therefore regulated the risk retention group's operations in conflict with the LRRA. *Id.* at 981 (quoting *Wadsworth*, 748 F.3d at 108) (alteration in original). Similarly, Washington's anti-arbitration statute places a restriction on risk retention groups that is not required by the LRRA or by all other states. Thus, the Washington anti-arbitration statute "regulate[s], directly or indirectly, the operation of a risk retention group." 15 U.S.C. § 3902(a)(1).

Moreover, Defendants' reading of the LRRA would jeopardize the purpose of the statute. The LRRA was not enacted simply to keep states from discriminating against risk retention groups. Instead, as described above, the LRRA was passed by Congress in an effort to support a struggling insurance market. In order to do so, the Act "eliminat[ed] the need for compliance with numerous non-chartering state statutes that, in the aggregate, would thwart the interstate operation [of] . . . risk retention groups." H.R.Rep. No. 97-190, at 12 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1432, 1441 (House report for the PLRRA); *see also* H.R. Rep. No. 99-865, at 8–9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5303, 5305–06 (House report for the LRRA explaining that it "is necessary to exempt risk retention and purchasing groups from State law . . . in order to achieve the beneficial effects of such groups referred to above."). Allowing a state such as Washington to force foreign risk retention groups to alter their contracts would threaten this goal.

As the anti-arbitration statute "offends the LRRA's broad preemption language," it may only be "save[d]" if an exception in 15 U.S.C. §§ 3902(a)(1) or 3905 applies. *Attorneys Liab. Prot. Soc'y, Inc.*, 838 F.3d at 980. These exceptions generally "authorize[] nonchartering states to

require risk retention groups to comply only with certain basic registration, capitalization, and taxing requirements, as well as various claim settlement and fraudulent practice laws." *Wadsworth*, 748 F.3d at 106. Defendants contend that the Washington anti-arbitration statute falls into two of these exceptions. First, they argue that the anti-arbitration statute is an example of Washington requiring foreign risk retention groups to "comply with the unfair claim settlement practices law of the State." 15 U.S.C. § 3902(a)(1)(A). Second, they claim the Washington statute falls under the exception for state laws "regarding deceptive, false, or fraudulent acts or practices." 15 U.S.C. § 3902(a)(1)(G). Defendants fail to explain how an anti-arbitration statute is an "unfair claim settlement practices law" or how it deals with "deceptive, false, or fraudulent acts," and we do not find support for either contention.

Washington's anti-arbitration statute offends the LRRA's broad preemption language and fails to fall into one of its exceptions. Therefore, the statute is preempted by the LRRA as it applies to out of state risk retention groups.

## III. Conclusion

The Washington anti-arbitration statute is preempted by the LRRA as it applies to risk retention groups chartered in another state.  We affirm the order of the district court compelling arbitration.**[2]**

---

**[2]** Defendants moved to certify a question to the Washington Supreme Court. Specifically, Defendants proposed to ask that court whether RCW § 48.18.200(1)(b) applied to prohibit the arbitration clause in this risk retention contract. The question of whether that statute, if so interpreted,

**AFFIRMED and REMANDED FOR FURTHER PROCEEDINGS.**

---

has been preempted by the LRRA is a question of federal law, not state law. We deny the motion to certify.

We grant the motion of the National Risk Retention Association for leave to file an *amicus curiae* brief in support of APIC.